# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOSEPH WAYNE EASTRIDGE,** *et al.*     :

       **Plaintiffs,**            :

    **v.**               :  **Civil Action No. 06-0448**

**UNITED STATES OF AMERICA,** *et al.*    :

       **Defendants**         :

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, by and through undersigned counsel, hereby respectfully submit their Opposition to Defendants' Motion to Dismiss and further state:

Plaintiffs spent decades incarcerated in federal prison for a crime they did not commit. Plaintiffs' constitutional rights to due process were repeatedly violated by the Defendants. These simple facts are not disputed by the Defendants, and, indeed, this Court has expressly held these facts to be true. Despite these undisputed facts, Defendants attempt to escape all legal responsibility for such grave violations of the Plaintiffs' constitutional rights. The bold assertion that each defendant in this matter should be granted blanket immunity for the severe and repeated constitutional violations of the Plaintiffs' due process rights is belied by the facts surrounding this case as well as the legal precedent in this jurisdiction.

Regan
Zambri & Long, P.L.L.C.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

In further support of their Opposition, the Plaintiffs respectfully refer the Court to the

attached Memorandum of Points and Authorities.

Respectfully submitted,

REGAN ZAMBRI & LONG, PLLC


By: _____/s/_____
Patrick M. Regan          No. 336107
Paul J. Cornoni           No. 489398
1919 M Street, NW, Suite 350
Washington, D.C.  20036
PH:  (202) 463-3030
*Co-Counsel for Plaintiffs*


By: _____/s/_____
John Zwerling, Esquire
Zwerling, Leibig & Moseley, PC
108 N. Alfred Street
Alexandria, Virginia  22314
PH:  (703) 684-8000
*Co-Counsel for Plaintiffs*

Regan
Zambri & Long, P.L.L.C.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss, Memorandum of Points and Authorities in support thereof and proposed Order was electronically filed and served via ECF, this __30th__ day of June, 2006, to:

> W. Mark Nebeker
> Assistant United States Attorney
> Judiciary Center Building
> 555 4th Street, N.W., Civil Division
> Washington, DC 20530

_____ /s/
Patrick M. Regan

Regan
Zambri & Long, P.L.L.C.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOSEPH WAYNE EASTRIDGE,** *et al.* | : | |
| **Plaintiffs,** | : | |
| **v.** | : | **Civil Action No.  06-0448** |
| **UNITED STATES OF AMERICA,** *et al.* | : | |
| **Defendants** | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, by and through undersigned counsel, hereby submit this Memorandum in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss.  In support thereof, the Plaintiffs respectfully state as follows:

## SUMMARY OF ARGUMENT

Plaintiffs have alleged viable causes of action pursuant to 42 U.S.C. §1983. Pursuant to this central statute, Defendants are liable for their repeated violations of the Plaintiffs' civil and constitutional rights.  The Defendants' Motion misapplies the legal precedent surrounding Plaintiffs' claims.

Plaintiffs spent decades incarcerated in federal prisons for a crime they did not commit.  Plaintiffs' constitutional rights to due process were repeatedly violated by the Defendants.  These simple facts are not disputed by the Defendants, and this Court has held these facts to be true.  However, Defendants attempt to escape all liability for such grave violations of the Plaintiffs' constitutional rights.  The bold assertion that each

Regan
Zambri & Long, P.L.L.C.
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

defendant in this matter should be granted blanket immunity for the severe and repeated constitutional violations of the Plaintiffs' due process rights is belied by the facts surrounding this case as well as the legal precedent in this jurisdiction.

### FACTS

Plaintiffs Joseph Wayne Eastridge, Joseph Nick Sousa and Salvatore Infantolino (hereinafter referred to as "Michael Damien") spent decades in federal prison for a crime they did not commit. In January 1976, Michael A. Damien, Joseph W. Eastridge, Stephen C. Jones, and Joseph N. Sousa were convicted in the Superior Court of the District of Columbia of first-degree murder, while armed, for the stabbing death of Johnnie Battle. These men were prosecuted by Defendant United States of America, by and through its agency, the United States Attorney's Office for the District of Columbia. (Compl. at ¶11, Exh. A)

Plaintiffs were sentenced to twenty years to life. Mr. Sousa served twenty years in jail before being released on parole. Mr. Eastridge served twenty-nine years before being released on parole. Decedent Michael A. Damien was sentenced to twenty (20) years to life. Decedent died on December 10, 2002 while incarcerated at the Atlanta Federal Penitentiary. Plaintiffs served this time as convicted murderers for a crime which it is more likely than not that no reasonable juror, based on the full evidentiary record, would find them guilty beyond a reasonable doubt. (Exh. A at ¶¶12-13)

During the trial, Defendants United States of America, through its agents, employees, and servants, including but not excluding, Defendant prosecutors Martin J.

Linsky and Joseph J. Guerrieri, violated the constitutional rights of Plaintiffs. (Exh. A at ¶14)

In April 2005, a Supplemental Petition was filed by the Plaintiffs alleging a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) based on the failure of Defendant United States of America to release material exculpatory and impeachment evidence. This Supplemental Petition was granted by the Honorable Rosemary M. Collyer, United States District Court Judge for the District of Columbia, on May 26, 2005.  (Exh. A at ¶¶15-16)

Judge Collyer, in her 59 page written opinion, details the constitutional violations of Plaintiffs Joseph Eastridge and Joseph Sousa and the decedent Michael Damien.  The Court found "that this is the rare case in which Petitioners can prove their 'actual innocence' of the crime charged as well as violations of their constitutional rights at trial."   (Exh. A at ¶17; Judge Collyer's Opinion at p. 59, Exh. B)

As a result of the Defendant's actions and omissions, the Plaintiffs' constitutional rights to procedural and substantive due process, to a fair trial, to liberty, to freedom, as well as other rights guaranteed to the Plaintiffs by and through the Constitution of the United States of America, including but not excluding rights guaranteed to Plaintiffs' by and through <u>Brady v. Maryland</u>, were violated.   (Exh. A at ¶18)

## **<u>BRADY INFORMATION</u>**

At trial, the Government's theory of the case was that a group associated with a motorcycle gang, the Pagans, was involved in a racially-charged confrontation with three Black men, including Mr. Battle, outside the Godfather Lounge in Washington,

DC.   After a series of verbal exchanges, Mr. Battle retrieved a handgun from his car and fired into the group, wounding one of the Pagans. Mr. Battle fled on foot down Wisconsin Avenue. Messrs. Jones, Damien, Eastridge, and Sousa *allegedly* gave chase, with their knives drawn, chasing Mr. Johnnie Battle up to Wisconsin Avenue, across Wisconsin Avenue, where Mr. Battle is seen tripping on a curb, falling backwards, with his arms up, and being stabbed repeatedly by these four defendants. (Exh. A at ¶19)

However, over thirty years later, what has become clear is that Messrs. Jennings, Barber, Jones and Wood *in fact* committed the murder.   More specifically, Messrs. Jennings and Wood **inculpated themselves through statements and actions after the murder.**   These statements and actions were material exculpatory pieces of evidence with respect to Plaintiffs Eastridge and Sousa and the decedent Michael Damien. **Defendants repeatedly failed to disclose these statements to the Plaintiffs.**  (Exh. A at ¶20)

More specifically, the Grand Jury testimony of Mr. Jennings and Mr. Wood were never provided to the Plaintiffs. Neither Mr. Jennings nor Mr. Wood testified at the trial. However, Mr. Jennings told the Grand Jury that, after a prior incident that evening, both he and Mr. Wood decided not to go to the Godfather Lounge.   Mr. Wood's Grand Jury testimony was substantially similar, adding that Mr. Jennings had driven him home and that he was in "no way involved in any of the events that took place at or near the Godfather Lounge." (Exh. A at ¶21)

At trial, a young woman who was at the Godfather Lounge, Ms. Heim, testified on behalf of the government that both Mr. Jennings and Mr. Wood were at the Godfather

on November 1, 1974 and that they were present during the encounters at the bar with Messrs. Battle, Brown, and Allen. A number of other government and defense witnesses offered similar testimony at trial. No witnesses denied the presence of Mr. Wood or Mr. Jennings at the Godfather. (Exh. A at ¶22)

This Grand Jury testimony was not provided to the defense for use at trial. This evidence is particularly exculpatory since counsel for the Plaintiffs repeatedly emphasized that Mr. Jennings and Mr. Wood, among others, were in the group at the Godfather–as a way to suggest that others might have been the murderers. In its closing statement the government ridiculed that defense theory of the case by calling them "Phantoms." The Grand Jury testimony is direct evidence that Mr. Jennings and Mr. Wood had guilty minds and lied to the Grand Jury. (Exh. A at ¶23)

Judge Collyer held that the grand jury testimony was clearly exculpatory, stating:

> As a general matter, false exculpatory statements can produce an inference of guilt. The combination of Ms. Heim's testimony that Mr. Wood and Mr. Jennings were present at the Godfather; that Mr. Jones was among those who chased Mr. Battle; and that Barber and Jennings ran on foot to Mr. Richter's house in Virginia, arriving distraught and wanting to hide, would have materially supported Petitioners' trial argument that the unindicted "phantoms" (no longer phantoms, but identified persons) were more likely the murderers. Had they been aware of the false testimony, defense counsel might have presented Ms. Heim with more-particularized questions about Mr. Wood and Mr. Jennings. Of course, they could also have called both men to testify and to confront their own Grand Jury testimony in an effort to show that persons other than the Petitioners could have committed the murder. (Exh. A at ¶28; Exh. B at p. 57)

Not only were these exculpatory pieces of evidence material but the nondisclosure prejudiced the Plaintiffs. The Grand Jury transcripts were material and changed the outcome of the case. Had these pieces of evidence been disclosed to the Plaintiffs and the jury, the outcome of the criminal trial would have been different. The most reasonable interpretation of all the evidence is that Plaintiffs were not present at the site of the murder, and did not aid and abet others in murdering Mr. Battle.

For decades, Defendant United States of America routinely and repeatedly refused to disclose this exculpatory material despite Plaintiffs' numerous requests.

Judge Collyer specifically found that "[T]he most reasonable interpretation of all the evidence is that Petitioners did not chase Mr. Battle and did not participate directly in murdering him." (Exh. B at p.8)    Plaintiffs were wrongly convicted and imprisoned for crimes that they did not commit.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure  establish a "liberal system of 'notice pleading'" requiring "only a 'short plain statement of the claim showing that the pleader is entitled to relief.'" See e.g., Leatherman v. Tarrant County, 507 U.S. 163, 168 (1993) (citations omitted).

In the instant case, all of the factual predicates necessary to sustain the Complaint are before this Court, either explicitly or by reasonable inference. For the purposes of a Rule 12(b)(6) motion, allegations alone are sufficient for the purposes of carrying the Plaintiff's burden on a disputed point. See, e.g., Madanes v. Madanes, 981 F.Supp. 241 (S.D.N.Y. 1997) (denying defendant's motion to dismiss because of presence of

requisite fraud allegations, and observing that "[a]t this stage, nothing more is required").

Thus, the Court should deny Defendants' motion pursuant to Rule 12(b), doing so is only a matter of fundamental fairness and is consistent with the sound administration of justice. Indeed, as is widely acknowledged:

> [**T**]**he court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme**, since it is important that new legal theories be explored and assayed in the light of actual facts, rather than the pleader's suppositions. In any event, the Motion for Summary Judgment provides a more expeditious and effective procedure for quickly terminating an action that does not appear to entitle the plaintiff to relief on its substantive merits.

5A Charles Alan Wright, et al., Federal Practice & Procedure § 1357, at 343-44 (emphasis added).

## I.    PLAINTIFFS HAVE PROPERLY SERVED DEFENDANTS JOSEPH J. GUERRIERI AND MARTIN J. LINSKY

According to the Federal Rules of Civil Procedure, the deadline to serve Defendants Guerrieri and Linsky has not yet passed. Federal Rule of Civil Procedure 4(m) provides that a plaintiff shall have 120 days to properly serve a defendant with notice of a lawsuit. The Complaint was filed in this case on or about March 10, 2006. The deadline to serve the Defendants is set to expire on or about July 8, 2006. Most importantly, Plaintiffs have properly served Defendants Guerrieri and Linsky with sufficient notice according to the Federal Rules of Civil Procedure.

Plaintiffs' Counsel was informed by Mark Nebeker, Counsel for the Defendants, that Defendants Linsky and Guerrieri authorized Mr. Nebeker to act as their agent in this matter for the purposes of accepting future service.   Shortly thereafter, Plaintiffs' Counsel forwarded by courier, a stamped Summons, copy of the Complaint and the Court's initial Order to Defendants Guerrieri and Linsky to the office of Mark Nebeker, at 501 3rd Street, N.W., 4$^{h}$ Floor, Washington, DC.   On June 22, 2006, Plaintiffs' Counsel received confirmation from Defense Counsel, Mark Nebeker, that he had received the aforementioned set of materials respective to each of the Defendants.   (See Exh. C, Affidavit of Service of Defendants Guerrieri and Linsky)

## II.     THE DOCTRINE OF PROSECUTORIAL IMMUNITY DOES NOT BAR PLAINTIFFS' COMPLAINT

While prosecutorial immunity is absolute in certain circumstances the case at bar is distinguishable.   Prosecutors receive "absolute" immunity for advocatory functions only.   Courts have frequently employed a rigid advocatory/investigative/administrative trichotomy in analyzing prosecutorial functions.   See McSurely v. McClellan, 697 F.2d 309, 318 (D.C. Cir. 1982)("a prosecutor engaged in essentially investigative or administrative functions receives only the lesser protection of qualified immunity"); see also Dellums v. Powell, 660 F.2d 802, 805 (D.C. Cir. 1981); Taylor v. Kavanagh, 640 F.2d 45 (2d. Cir. 1981); Mancini v. Lester, 630 F.2d 990, 992-93 (3d. Cir. 1980); Briggs v. Goodwin, 569 F.2d 10, 20-21 (D.C. Cir.1977), cert. denied, 437 U.S. 904, 90 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).

While prosecutors may have immunity for acts performed within the scope of their prosecutorial duties, prosecutors **are liable** for actions taken which are investigatory in nature.  See e.g., Kalina v. Fletcher, 118 S. Ct. 502, 139 L. Ed. 2d 471 (U.S. 1997); Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Rex v. Teeples, 753 F.2d 840, 844 (10th Cir. 1985); Briggs v. Goodwin, 569 F.2d 10, 19-20 (D.C. Cir. 1977) Hampton v. City of Chicago, 484 F.2d 602 (7th Cir. 1973).

Here, the prosecutors received Brady evidence while investigating a criminal offense.  During the investigation, Defendants actively sought and received witnesses statements in the form of grand jury testimony.  This is no different from the typical scenario wherein a police officer obtains a statement from a witness containing exculpatory information (during an investigation) and fails to turn over such Brady information to the prosecutor involved in the case.  In such a scenario, the Courts have routinely held that the plaintiff's Brady rights have been violated and immunity does not exist for the actions taken by the police officer.  See e.g., Bembenek v. Donohoo, 355 F. Supp. 2d 942 (E.D. Wisc. 2005); McMillian v. Johnson, 878 F. Supp. 1473 (M.D. Ala. 1995); Sanders v. English, 950 F.2d 1152 (5th Cir. 1992); Goodwin v. Metts, 885 F.2d 157 (4th Cir. 1989).

Courts have held a prosecutor's failure to preserve evidence as non-advocatory.  Our case is similar to Henderson v. Fisher, 631 F.2d 1115 (3d. Cir. 1980) (per curiam) (knowing failure to preserve exculpatory evidence held to be non-advocatory) and Wilkinson v. Ellis, 484 F.Supp. 1072 (E.D. Pa. 1980) (destruction of evidence held to be non-advocatory).  In the case at bar, the prosecutors knowingly failed to disclose

exculpatory information. The effect of this non-disclosure is uniquely similar to the cases cited above, i.e, a violation of Plaintiffs' due process rights to a fair trial.

Additionally, Defendants are not entitled to "qualified" immunity since their actions violated the constitutional rights of the Plaintiffs pursuant to <u>Brady</u>. According to the undisputed caselaw, federal officers are not entitled to "qualified" immunity if their conduct violated clear constitutional rights. <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 US 800 (1982). In <u>Brady</u>, the Supreme Court held that

> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87 (1963).

The standard for disclosure in criminal cases is "materiality." Evidence is material if there is a reasonable probability that the disclosure of evidence would change the outcome of the proceeding. <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). There can be no question here. Judge Collyer specifically held that the Defendants violated the clear constitutional rights of the Plaintiffs by failing to disclose material exculpatory evidence. (Exh. B at p. 57) Defendants Guerrieri and Linsky are not entitled to "qualified" immunity since their actions violated the unadorned constitutional rights of the Plaintiffs.

## III.  THE DOCTRINE OF SOVEREIGN IMMUNITY DOES NOT BAR PLAINTIFFS' COMPLAINT

Defendants attempt to escape liability by claiming that the doctrine of sovereign immunity bars suit against the United States of America. (Defts.' Mtn at pp. 9-12) Well

true, the doctrine of sovereign immunity is normally enveloping, the unique facts of this case compel the Court to disregard this policy and hold the United States liable for its actions.

The United States Supreme Court has recognized that Congress did intend for municipalities and other local governments to be included among those "persons" to whom §1983 applies. <u>See</u> <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 681 (1978). States and other municipalities, therefore, can be sued directly under §1983 for monetary, declaratory, or injunctive relief. <u>Id.</u>

> Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. <u>Id</u>. at 690-91.

More specifically, when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts "may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> Plaintiffs' injuries are a direct result of such an official policy or custom.

Here, Plaintiffs have put forth a valid claim against Defendant United States of America for creating and maintaining an unconstitutional custom, policy and/or practice of failing to disclose material exculpatory evidence in violation of a defendant's due process rights under <u>Brady</u>. Plaintiffs have also put forth a valid claim against

Defendant United States of America for creating and maintaining an unconstitutional custom, policy and/or practice of failing to adequately train and supervise its employees and agents, including the named Defendants in this case, regarding failing to disclose material exculpatory evidence in violation of a defendant's due process rights under Brady. (Exh. A at ¶¶ 39-45) These allegations are sufficient to survive a motion to dismiss at this stage. See, e.g., Madanes v. Madanes, 981 F.Supp. 241 (S.D.N.Y. 1997) (For the purposes of a Rule 12(b)(6) motion, allegations alone are sufficient for the purposes of carrying the Plaintiff's burden on a disputed point.).

Although 42 U.S.C. §1983 does not explicitly define the United States as a "person" free to be sued for civil rights and constitutional violations, the thrust of the statute as well as the unique facts of this case demonstrate that sovereign immunity is inapplicable. Here, Defendants were engaged in a criminal investigation and prosecution of a *state* law crime. If the underlying crime of which Plaintiffs were originally charged had occurred in any alternative location in the United States (other than the District of Columbia), a state and/or municipality would have surely investigated and prosecuted the matter. If so, Plaintiffs' legal claims would undoubtly be applicable pursuant to 42 U.S.C. §1983 and the governmental agency and/or municipality involved would not be entitled to sovereign immunity. See Monell, discussed supra. Defendants were performing a typically held state function. See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 601 (1982) ("the power to create and enforce a legal code, both civil and criminal" is one of the quintessential functions of a State.)

The underlining principle of 42 U.S.C. §1983 is severely disturbed if Defendants are held immune from suit.  The specific purpose of the statute is to protect individuals such as the Plaintiffs.  More specifically, Plaintiffs' constitutional rights to due process were repeatedly violated.  42 U.S.C. §1983 should be "broadly construed against all forms of official violation of federally protected rights." <u>Monell</u> at 701.  Moreover,

> [absent] a clear statement in the legislative history supporting the conclusion that § 1 was not to apply to the official acts of a municipal corporation-which simply is not present-there is no justification for excluding municipalities from the "persons" covered by [42 U.S.C. §1983]… <u>Monell</u> at 701.

Granting immunity to the Defendants in this instance would have the practical effect of denying an entire subset of individuals the rights afforded to them pursuant to 42 U.S.C. §1983.  This large subset of individuals would include most, if not all, criminal defendants in the District of Columbia.  This is true since Defendant United States is solely responsible for the prosecution of criminal matters in the District of Columbia.

Such a decision would severely restrict or impede the purpose of this important statute.  "Purpose of federal civil rights statute (42 USCS § 1983)…is to interpose federal courts between states and people, as guardians of people's federal rights…" <u>Mitchum v. Foster</u>, 407 U.S. 225 (1972)  This is exactly what Plaintiffs' Complaint is alleging.  Plaintiffs have alleged that their federal rights to due process and a fair trial have been violated.  Here, the unique situation is that Defendants violated Plaintiffs' federal rights while undertaking a largely held state function, i.e, investigation and prosecution of a state law criminal offense.  See <u>Alfred L. Snapp & Son, Inc. v. Puerto</u>

Rico ex rel. Barez, 458 U.S. 592, 601 (1982). 42 U.S.C. §1983 is a vital tool used to protect constitutional rights. An entire set of persons living in the District of Columbia which potentially face criminal prosecution should not be forbidden from using such an important instrument.

Defendant prosecutors' argument that they should not be considered "state" actors is of no moment. First, as stated previously, Defendants were performing a typically held state function when their violations of Plaintiffs' constitutional rights occurred. Second, even assuming arguendo that the Court finds that the Defendant prosecutors were not "state" actors, Defendants Linsky and Guerrieri are subject to suit pursuant to Bivens v. Six Unknown Federal Agents, 403 U.S. 388 (1971); see also Kingsley v. Bureau of Prisons, 937 F.2d 26, 31 (2d. Cir. 1991) (In a Bivens action, damages may be obtained for injuries consequent upon the violation of the Constitution *by federal officials*.)

Simply put, there is no justification for failing to hold Defendants liable for its repeated violations of Plaintiffs' due process rights as well as its actions in creating and maintaining an unconstitutional custom, policy and/or practice under Brady.

## IV.    PLAINTIFFS DO NOT NEED TO EXHAUST ADMINISTRATIVE REMEDIES PURSUANT TO FTCA

Lastly, Defendants argument that Counts IV and V should be dismissed due to Plaintiffs' failure to exhaust administrative remedies is misplaced. Defendants have improperly couched Plaintiffs' Complaint as one for negligence. On the contrary, Plaintiffs' Complaint is expressly based on the violation of constitutionally protected

rights.    More specifically, Plaintiffs have alleged that the Defendants' repeated violations of Plaintiffs' constitutional rights (due process rights secured by the Supreme Court's decision in <u>Brady v. Maryland</u>) caused severe injuries to Plaintiffs.  This is not a case wherein the Plaintiffs are alleging negligence.  Plaintiffs have specifically alleged the violation of their due process rights to a fair trial as interpreted by the Supreme Court's decision in <u>Brady</u>.    Therefore, Plaintiffs are not required to exhaust the administrative remedies of the Federal Tort Claims Act since Plaintiffs' Complaint is not based upon tort law.  Defendants have failed to provide legal authority for its argument that Plaintiffs must exhaust administrative remedies under the FTCA in order to file a civil rights action.

Defendants' claim that Plaintiffs' can not establish that "the wrongful conduct by defendants was the proximate cause" of Decedent Michael Damien's death is incorrect and irrelevant at this stage of the litigation.  (Defts.' Mtn at p. 20) Plaintiffs' Complaint must be viewed in the light most favorable to their claim and their allegations must be accepted as true.  <u>See</u> <u>In re United Mine Workers of Am. Employee Benefit Plans Litig.</u>, 854 F.Supp. 914, 915 (D.D.C.1994);  <u>see also</u> <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C.Cir.1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."); <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957) (Dismissal under Rule 12(b)(6) is warranted only when 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.)

Plaintiff Paul Zuckerburg has properly alleged that the repeated violations of Michael Damien's civil and constitutional rights caused his early death. This is all that is required of Plaintiff at this stage of the litigation. The Federal Rules of Civil Procedure require notice pleading. Under the Federal Rules, the details of claims and defenses are not revealed in a formal pleading; nor does pleading serve the function of framing the issues. Instead, these functions are carried out by the discovery and deposition processes and other pretrial procedures. See Fed.R.Civ.P. 8(a); Hartford Ins. Co. v. Socialist People's Libyan Arab Jamahirya, 422 F.Supp.2d 203 (D.D.C. 2006).

To the extent that Defendants have made evidentiary arguments, such arguments are not ripe. The Federal Rules were designed, in fact, to reject arguments precisely like the one the Defendants are advancing here, namely, that because the Plaintiffs have not in their Complaint spelled out all of the facts with encyclopedic specificity, the Plaintiffs' Complaint should be dismissed. Contrary to the Defendants' assertions, however, all of the factual predicates necessary to sustain Plaintiffs' Complaint are before this Court, either explicitly or by reasonable inference, which is all the Federal Rules of Civil Procedure require at this stage of the litigation. Accordingly, the Court should reject the Defendants' transparent attempts to hold Plaintiff Paul Zuckerburg to a standard higher than the one plainly imposed by the governing case law.

Pursuant to Rule 12(b), if matters outside of the pleading at issue are disputed by the parties and presented to the court in connection with a Rule 12(b)(6) motion, then "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties are to be given reasonable opportunity to present all material

made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b); <u>see, e.g.</u>, <u>Fayetteville Investors v. Commercial Builders, Inc.</u>, 936 F.2d 1462 (4th Cir. 1991); <u>IMS, P.C. v. Alvarez</u>, 129 F.3d 618, 619 n.1 (D.C. Cir. 1997); <u>Judicial Watch, Inc. v. Clinton</u>, 880 F. Supp. 1, 7 (D.D.C. 1995) (converting Rule 12(b)(6) motion into Rule 56 motion). As the D.C. Circuit Court of Appeals has explained, "[t]he mandatory language in which Rule 12(b)'s proviso is couched underscores the importance of providing plaintiffs with the essential safeguards of summary judgment whenever they face a motion to dismiss that turns on questions of fact." <u>Gordon v. National Youth Work Alliance</u>, 675 F.2d 356, 360 (D.C. Cir. 1982) (emphasis added).

In this case, the Defendants' motion makes clear that the Plaintiff Paul Zuckerburg "face[s] [motion] to dismiss that turn[s] on questions of fact," and as such, that Rule 56 and not Rule 12 should govern the Defendants' pending Motion. <u>See</u> <u>id</u>. More specifically, Defendants' proximate causation argument is **clearly fact-intensive and requires discovery**. Moreover, at this juncture, the Plaintiffs' burden is simply to allege the required factual predicates, a burden which has plainly been met here. <u>See, e.g.</u>, <u>Fayetteville Investors</u> at 1471 ("it is not necessary for plaintiff to come forward with all the facts of a case whenever defendant files a motion to dismiss for the purpose of testing the sufficiency of the complaint.); <u>Hall v. Virginia</u>, 285 F.3d 421 (4th Cir. 2004) (Purpose of Rule 12 is to test the legal sufficiency of a complaint, rather than the facts alleged in support of it<u>.); Madanes v. Madanes</u>, 981 F. Supp. 241, 255 (S.D.N.Y. 1997) (denying defendant's motion to dismiss because of presence of requisite allegations, and observing that "[a]t this stage, nothing more is required"). **Notably, it is**

**widely recognized that "[a]s a general rule, summary judgment is appropriate only after 'adequate time for discovery**.'"   Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  As stated previously, **no amount of discovery has taken place in this case.**

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request Defendants' Motion to Dismiss be denied in its entirety.

Respectfully submitted,

REGAN ZAMBRI & LONG, PLLC


By:  _____/s/_____

Patrick M. Regan            No. 336107
Paul J. Cornoni            No. 489398
1919 M Street, NW, Suite 350
Washington, D.C.  20036
PH:  (202) 463-3030
*Co-Counsel for Plaintiffs*


By:  _____/s/_____

John Zwerling, Esquire
Zwerling, Leibig & Moseley, PC
108 N. Alfred Street
Alexandria, Virginia  22314
PH: (703) 684-8000
*Co-Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**JOSEPH WAYNE EASTRIDGE,** *et al.*             :

        **Plaintiffs,**                                   :

     **v.**                                              :     **Civil Action No.  06-0448**

**UNITED STATES OF AMERICA,** *et al.*           :

        **Defendants**                                   :

<u>**ORDER**</u>

    Upon consideration of the Defendants' Motion to Dismiss, the Opposition thereto filed by the Plaintiffs, and a review of the entire record herein, it is this _____ day of _____, 2006 hereby:

    ORDERED that the Defendants' Motion is hereby DENIED in its entirety.

SO ORDERED.

_____
Colleen Kollar-Kotelly
United States District Judge

cc:    Patrick M. Regan, Esquire
       Paul J. Cornoni, Esquire
       1919 M Street, NW, Suite 350
       Washington, D.C.  20036

       John Zwerling, Esquire
       108 N. Alfred Street
       Alexandria, Virginia  22314

       W. Mark Nebeker, Esquire
       Assistant United States Attorney
       Judiciary Center Building
       555 4th Street, N.W., Civil Division
       Washington, DC 20530