## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOSEPH WAYNE EASTRIDGE**                                    :
**675 Kings Highway**                                         :
**Frederick, Virginia 22405**                                :
                                                             :
    **and**                              :
                                                             :
**JOSEPH NICK SOUSA**                                        :
**7325 Passapatanzy Drive**                         CASE NUMBER  1:06CV00448
**King George, Virginia 22485**
                                                    JUDGE: Colleen Kollar-Kotelly
    **and**
                                                    DECK TYPE: Personal Injury/Malpractice
**PAUL ZUKERBERG, ESQUIRE as**                                    *10*
**Personal Representative of the Estate of**         DATE STAMP: 03/█/2006
**Salvatore Infantolino a.k.a. Michael A. Damien**  :
**108 N. Alfred Street**                                     :
**Alexandria, Virginia  22314**                              :
                                                             :
      **Plaintiffs,**          :    **Civil Action No.**
                                                             :
  **v.**                                           :
                                                             :
**UNITED STATES OF AMERICA,**                                :
                                                             :
**SERVE: Kenneth L. Wainstein**                              :
       **U.S. Attorney for the**          :
       **District of Columbia**            :
       **Judiciary Center**                :
       **555 Fourth St., N.W.**            :
       **Washington, D.C. 20530**          :
                                                             :
  **and**                                          :
                                                             :
       **Hon. Alberto Gonzales**           :
       **Attorney General of**             :
       **the United States of America**    :
       **U.S. Department of Justice**      :
       **950 Pennsylvania Avenue, NW**     :
       **Washington, DC 20530-0001**       :

and                               :

**JOSEPH J. GUERRIERI, Individually**     :
**and in his Official Capacity as an Employee**     :
**of THE UNITED STATES OF AMERICA**     :
**Judiciary Center**     :
**555 Fourth St., N.W.**     :
**Washington, D.C. 20530**     :
                                    :

    and                         :
                                    :

**MARTIN J. LINSKY, Individually**     :
**and in his Official Capacity as an Employee**     :
**of THE UNITED STATES OF AMERICA**     :
**Judiciary Center**     :
**555 Fourth St., N.W.**     :
**Washington, D.C. 20530**     :
                                    :

                **Defendants.**        :

## COMPLAINT

(Violation of Constitutional Rights: 42 U.S.C. §1983 Claims; <u>Brady</u> Violations;
Wrongful Conviction; Wrongful Imprisonment; Unconstitutional Custom, Practice,
and Policy; Failure to Train and Supervise; Wrongful Death and Survival Action
on Behalf of Estate of Salvatore Infantolino a.k.a. Michael A. Damien)

## INTRODUCTION

1.    This action is brought by Joseph Wayne Eastridge, Joseph Nick Sousa and

Paul Zukerberg, Esquire as Personal Representative of the Estate of Salvatore Infantolino

a.k.a. Michael A. Damien, for monetary damages for violations of civil rights, including

substantive and procedural due process rights, and all other civil rights guaranteed to

Plaintiffs under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments of the

Constitution of the United States of America.

## JURISDICTION AND VENUE

2.    This is an action brought pursuant to 42 U.S.C. § 1983 seeking damages against the Defendants for committing acts under color of law which deprived the Plaintiffs of rights, privileges and immunities secured by the Constitution of the United States.

3.    The jurisdiction of this Court is invoked under 28 U.S.C. § 1331 and § 1343, this being an action authorized by law to redress the deprivation under color of Federal law, statute, ordinance, regulation, custom and usage of a right, privilege, and immunity secured to the Plaintiffs by the Constitution of the United States.

4.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391, as the cause of action arose in the District of Columbia.

## PARTIES

5.    At all relevant times hereto, Plaintiff Joseph Wayne Eastridge is an adult resident of the Commonwealth of Virginia.

6.    At all relevant times hereto, Plaintiff Joseph Nick Sousa is an adult resident of the Commonwealth of Virginia.

7.    Plaintiff Paul Zukerberg, Esquire is pursuing this claim as the Personal Representative of the Estate of Salvatore Infantolino a.k.a. Michael A. Damien. Mr. Zukerberg is in the process of being appointed as the Personal Representative of the estate through the Probate Division of the Superior Court of the District of Columbia. [Hereinafter "the Plaintiffs" unless otherwise specifically indicated, shall refer

collectively to Joseph Wayne Eastridge, Joseph Nick Sousa, and the Estate of Michael A. Damien.]

8.      Defendant the United States of America (hereinafter "USA"), is subject to suit under Federal Law and the Constitution of the United States of America for the negligent, wanton, willful or wrongful acts or omissions of employees of the United States Attorney's Office for the District of Columbia (hereinafter "U.S. Attorney's Office") and the relevant employees, agents and/or servants of such agency.

9.      Upon information and belief, and at all relevant times herein, Defendant Martin J. Linsky was an adult citizen and was an Assistant United States Attorney involved in the criminal prosecution of the Plaintiffs.  Upon further information and belief, and at all relevant times herein, Defendant Martin J. Linsky was acting as an employee, servant and/or agent of Defendant United States of America and/or The United States Attorney's Office.

10.     Upon information and belief, and at all relevant times herein, Defendant Joseph J. Guerrieri was an adult citizen and was an Assistant United States Attorney involved in the criminal prosecution of the Plaintiffs.  Upon further information and belief, and at all relevant times herein, Defendant Joseph J. Guerrieri was acting as an employee, servant and/or agent of Defendant United States of America and/or The United States Attorney's Office.

## FACTS

11.     In January 1976, decedent Michael A. Damien, Plaintiff Joseph W. Eastridge, Stephen C. Jones, and Plaintiff Joseph N. Sousa were convicted in the Superior Court of the District of Columbia of first-degree murder, while armed, for the stabbing death of Johnnie Battle. A fifth co-defendant, Richard C. Richter, was convicted of assault. These men were prosecuted by Defendant United States of America, by and through its agency, the United States Attorney's Office for the District of Columbia. Plaintiffs Joseph W. Eastridge and Joseph Nick Sousa, and the decedent Michael A. Damien were innocent of these criminal charges and were wrongly convicted and imprisoned for such offenses.

12.     Plaintiffs were sentenced to twenty years to life. Mr. Sousa served twenty years in jail before being released on parole. Mr. Eastridge served twenty-nine years before being released on parole. Plaintiffs served this time as convicted murderers for a crime which it is more likely than not that no reasonable juror, based on the full evidentiary record, would find them guilty beyond a reasonable doubt.

13.     Decedent Michael A. Damien was sentenced to twenty (20) years to life. Decedent died on December 10, 2002 while incarcerated at the Atlanta Federal Penitentiary. The decedent served this time as a convicted murderer for a crime which it is more likely than not that no reasonable juror, based upon the full evidentiary record, would find him guilty beyond a reasonable doubt.

14.    During the trial, Defendants United States of America, through its agents, employees, and servants, including but not excluding, Defendant prosecutors Martin J. Linsky and Joseph J. Guerrieri, violated the constitutional rights of Plaintiffs Joseph Eastridge and Joseph Sousa, and the decedent Michael Damien.

15.    In April 2005, a Supplemental Petition was filed by the Plaintiffs and the decedent Michael Damien wherein Plaintiffs and the decedent Michael Damien alleged a violation of Brady v. Maryland, 373 U.S. 83 (1963) based on the failure of Defendant United States of America to release material exculpatory and impeachment evidence.

16.    This Supplemental Petition was granted by the Honorable Rosemary M. Collyer, United States District Court Judge for the District of Columbia, on May 26, 2005.

17.    Judge Collyer, in her 59 page written opinion, details the constitutional violations of Plaintiffs Joseph Eastridge and Joseph Sousa and the decedent Michael Damien. The Court found "that this is the rare case in which Petitioners can prove their 'actual innocence' of the crime charged as well as violations of their constitutional rights at trial."

18.    As a result of the Defendant's actions and omissions, the Plaintiffs' constitutional rights to procedural and substantive due process, to a fair trial, to liberty, to freedom, as well as other rights guaranteed to the Plaintiffs by and through the Constitution of the United States of America, including but not excluding rights guaranteed to Plaintiffs' by and through Brady v. Maryland, were violated.

## DETAILS OF CRIMINAL TRIAL

19.     At trial, the Government's theory of the case was that a group associated with a motorcycle gang, the Pagans, was involved in a racially-charged confrontation with three Black men, including Mr. Battle, outside the Godfather Lounge in Washington, DC.    After a series of verbal exchanges, Mr. Battle retrieved a handgun from his car and fired into the group, wounding one of the Pagans. Mr. Battle fled on foot down Wisconsin Avenue. Messrs. Jones, Damien, Eastridge, and Sousa *allegedly* gave chase, with their knives drawn, chasing Mr. Johnnie Battle up to Wisconsin Avenue, across Wisconsin Avenue, where Mr. Battle is seen tripping on a curb, falling backwards, with his arms up, and being stabbed repeatedly by these four defendants.

20.     However, over thirty years later, what has become clear is that Messrs. Jennings, Barber, Jones and Wood *in fact* committed the murder.    More specifically, Messrs. Jennings and Wood inculpated themselves through statements and actions after the murder.    These statements and actions were material exculpatory pieces of evidence with respect to Plaintiffs Eastridge and Sousa and the decedent Michael Damien. Defendants failed to disclose these statements to the Plaintiffs.

21.     More specifically, the Grand Jury testimony of Mr. Jennings and Mr. Wood were never provided to the Plaintiffs. Neither Mr. Jennings nor Mr. Wood testified at the trial. However, Mr. Jennings told the Grand Jury that, after a prior incident that evening, both he and Mr. Wood decided not to go to the Godfather Lounge.   Mr. Wood's Grand Jury testimony was substantially similar, adding that Mr. Jennings had driven him home

- 7 -

and that he was in "no way involved in any of the events that took place at or near the Godfather Lounge."

22.    At trial, a young woman who was at the Godfather Lounge, Ms. Heim, testified on behalf of the government that both Mr. Jennings and Mr. Wood were at the Godfather on November 1, 1974 and that they were present during the encounters at the bar with Messrs. Battle, Brown, and Allen. A number of other government and defense witnesses offered similar testimony at trial. No witnesses denied the presence of Mr. Wood or Mr. Jennings at the Godfather.

23.    This Grand Jury testimony was not provided to the defense for use at trial. This evidence is particularly exculpatory since counsel for the Plaintiffs repeatedly emphasized that Mr. Jennings and Mr. Wood, among others, were in the group at the Godfather–as a way to suggest that others might have been the murderers. In its closing statement the government ridiculed that defense theory of the case by calling them "Phantoms." The Grand Jury testimony is direct evidence that Mr. Jennings and Mr. Wood had guilty minds and lied to the Grand Jury.

24.    Judge Collyer found that "[T]here is no doubt that the prosecution was aware before trial that the Jennings/Wood claim of distance from the Godfather was contradicted."

25.    The Defendants' failure to produce the Grand Jury testimony of Messrs. Wood and Jennings was a constitutional violation that prejudiced the Plaintiffs at trial. The trial record is replete with evidence that both men were present at the Godfather on

November 1, 1974. Yet, they testified before the Grand Jury that they were not. The prosecution was aware of this discrepancy but did not produce the Grand Jury transcripts to the Plaintiffs.

26.     In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87 (1963).

27.     The standard for disclosure in criminal cases is "materiality." Evidence is material if there is a reasonable probability that the disclosure of evidence would change the outcome of the proceeding. United States v. Bagley, 473 U.S. 667, 682 (1985). This evidence was clearly material and would have changed the outcome of the trial. Indeed, Judge Collyer ruled so in her written opinion.

28.     Judge Collyer held that the grand jury testimony was clearly exculpatory. "As a general matter, false exculpatory statements can produce an inference of guilt. The combination of Ms. Heim's testimony that Mr. Wood and Mr. Jennings were present at the Godfather; that Mr. Jones was among those who chased Mr. Battle; and that Barber and Jennings ran on foot to Mr. Richter's house in Virginia, arriving distraught and wanting to hide, would have materially supported Petitioners' trial argument that the unindicted "phantoms" (no longer phantoms, but identified persons) were more likely the murderers. Had they been aware of the false testimony, defense counsel might have presented Ms. Heim with more-particularized questions about Mr. Wood and

Mr. Jennings. Of course, they could also have called both men to testify and to confront their own Grand Jury testimony in an effort to show that persons other than the Petitioners could have committed the murder."

29.    Not only were these exculpatory pieces of evidence material but there nondisclosure prejudiced the Plaintiffs. The Grand Jury transcripts were material and changed the outcome of the case. Had these pieces of evidence been disclosed to the Plaintiffs and the jury, the outcome of the criminal trial would have been different. The most reasonable interpretation of all the evidence is that Plaintiffs were not present at the site of the murder, and did not aid and abet others in murdering Mr. Battle.

30.    For decades, Defendant United States of America routinely and repeatedly refused to disclose this exculpatory material despite Plaintiffs' numerous requests.

31.    Judge Collyer specifically found that "[T]he most reasonable interpretation of all the evidence is that Petitioners did not chase Mr. Battle and did not participate directly in murdering him." Plaintiffs were wrongly convicted and imprisoned for crimes that they did not commit. Plaintiffs have now been exonerated of theses charges, and thus, the instant action is appropriate.

## CAUSES OF ACTION

### COUNT ONE
**(42 U.S.C. §1983 Fourteenth Amendment Violation:
Failure to Disclose Material Exculpatory and Impeachment
Information (Brady Claim); Violation of Right to Fair Trial; Wrongful
Conviction and Imprisonment: Defendants The United States of America,
Martin J. Linsky and Joseph J. Guerrieri)**

32.    Plaintiffs incorporate, by reference, Paragraphs 1-31 as if fully set forth herein.

33.    Defendant United States of America, through its agencies, employees, agents, and/or servants, including but not excluding, Defendants Martin J. Linsky and Joseph J. Guerrieri, acting deliberately, recklessly and under of color of law, withheld and suppressed exculpatory and impeachment evidence from the Plaintiffs that, for example, corroborated the Plaintiffs' alibis, and that exculpated the Plaintiffs, resulting in their wrongful convictions and imprisonments.

34.    By failing to disclose this information, Defendants violated the Fourteenth Amendment, as interpreted by Brady v. Maryland, 373 U.S. 83 (1963) and its progeny which impose a clear duty on the Defendant and its employees, agents and/or servants to report all material exculpatory and impeachment information to persons charged with criminal offenses. These actions and omissions amounted to deliberate indifference and/or intentional misconduct. These actions and omissions were reckless, wanton and consciously indifferent to the rights of the Plaintiffs. For decades, Defendant United States of America routinely and repeatedly refused to disclose this exculpatory material despite the Plaintiffs' numerous requests.

35.    Defendants engaged in illegal behavior by helping establish or carry out regulations, customs, ordinances, rules, practices and/or policies, whether written down or established by persistent and widespread custom, that manifested a deliberate indifference to and reckless disregard of the rights of the Plaintiffs and other citizens, or

by following a deliberately indifferent or reckless ordinance, rule, policy, practice and/or regulation with respect to the foregoing.

36.    The Defendants deliberately, recklessly and under color of law violated the Plaintiffs' Fourteenth Amendment rights by failing adequately to investigate the Plaintiffs' claims of innocence.

37.    As a direct and proximate result of the actions and omissions of the Defendants, in violation of clearly established Fourteenth Amendment rights, and all other rights guaranteed to the Plaintiffs' by and through the Constitution of the United States of America, the Plaintiffs denied their right to a fair trial, were wrongly convicted and imprisoned, and suffered numerous injuries and damages.

38.    As a direct and proximate result of the acts of Defendants, the injuries and damages sustained by the Plaintiffs, arising from the deprivation of civil and constitutional rights, including the violation of their clearly established rights under the Fourth, Fifth, Eight, Ninth, and Fourteenth Amendments to the Constitution; personal injuries; pain and suffering; severe mental anguish; emotional distress; extreme fear; economic damages including the loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities, and embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom and physical liberty including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel,

enjoyment, and expression.  Furthermore, as a direct result of their unjust convictions and imprisonment, many of the effects of these disabilities continue to plague the Plaintiffs to this day.

## COUNT TWO
**(42 U.S.C. §1983: UnConstitutional Governmental Custom, Policy or Practice: Defendant United States of America)**

39.    The Plaintiffs incorporate, by reference, Paragraphs 1-38 as if fully set forth herein.

40.    Defendant United States of America, by and through its policymakers, created and maintained a custom, policy and/or practice of failing to disclose material exculpatory evidence in violation of a defendant's due process rights under Brady v. Maryland, prejudicing criminal defendants, including the Plaintiffs in this case, and constituting an unconstitutional governmental custom, practice and/or policy. Defendant United States of America had actual or constructive knowledge of its unconstitutional custom, policy and/or practice of failing to disclose material exculpatory evidence.

41.    These actions of Defendant United States of America amounted to deliberate indifference or intentional misconduct, and proximately and directly caused the injuries and damages suffered by the Plaintiffs in this case as set forth above.

## COUNT THREE
### (42 U.S.C. §1983: Failure to Train and Supervise: Defendant Unites States of America)

42.    The Plaintiffs incorporate, by reference, Paragraphs 1-41 as if fully set forth herein.

43.    Defendant United States of America, by and through its policymakers, created and maintained a custom, policy and/or practice of failing to adequately train and supervise its employees and agents, including the named and unnamed defendants in this case, regarding failing to disclose material exculpatory evidence in violation of a defendant's due process rights under Brady v. Maryland, prejudicing criminal defendants, including the Plaintiffs in this case, and constituting an unconstitutional municipal custom, practice and/or policy.

44.    Defendant United States of America had actual or constructive notice of such failures to train and supervise its employees, by failing to provide training and supervision despite an obvious need that such training and supervision was required, where Defendant knew to a moral certainty that it was foreseeable that its employees and/or agents would predictably confront such situations and as a result of the failure to train and supervise, constitutional violations would result.

45.    Such failures to train and supervise amounted to gross negligence, deliberate indifference or intentional misconduct, and encouraged and/or permitted these employees to engage in the conduct which proximately and directly caused the injuries and damages to Plaintiffs in this case as set forth above.

**COUNT FOUR**
**(Wrongful Death: Estate of Michael A. Damien)**

46.     Plaintiff Paul Zukerberg, as the Personal Representative of the Estate of Salvatore Infantolino a.k.a. Michael A. Damien, incorporates, by reference, the allegations set forth in Paragraphs 1-45 above, as if fully set forth herein, and further alleges that this claim arises under the District of Columbia Wrongful Death Statute, D.C. Code § 12-101, et seq.

47.     Plaintiff Paul Zukerberg, as the Personal Representative of the Estate of Salvatore Infantolino a.k.a. Michael A. Damien, alleges that as a direct and proximate result of the intentional, unconstitutional negligent and/or wrongful acts of the Defendants, the decedent was falsely convicted of a crime for which he was innocent, and was subsequently imprisoned where he died on December 10, 2002 while at the Atlanta Federal Penitentiary.

48.     Plaintiff Paul Zukerberg, as the Personal Representative of the Estate of Salvatore Infantolino a.k.a. Michael A. Damien, alleges that as a direct and proximate result of the intentional, unconstitutional negligent and/or wrongful acts of the Defendants, the next of kin of the decedent incurred burial expenses, lost their share of anticipated future earnings, lost the pecuniary value of services expected to be performed by the decedent, lost the parental care, guidance, education and training expected to be performed by the decedent, and lost any and all damages recoverable under the Act. and directly caused the injuries and damages to Plaintiffs in this case as set forth above.

## COUNT FIVE
### (Survival Act)

49.     Plaintiff Paul Zukerberg, as the Personal Representative of the Estate of

Salvatore Infantolino a.k.a. Michael A. Damien, incorporates, by reference, the

allegations set forth in Paragraphs 1-48 above, as if fully set forth herein, and further

alleges that this claim arises under the District of Columbia Survival Statute, D.C. Code §

16-2701, et seq.

50.     Plaintiff Paul Zukerberg, as the Personal Representative of the Estate of

Salvatore Infantolino a.k.a. Michael A. Damien, alleges that the decedent's right of action

for wrongful death and negligent conduct against the Defendants, survives in favor of

Plaintiff Paul Zukerberg, as the Personal Representative of the Estate of the deceased. as

a direct and proximate result of the intentional, unconstitutional negligent and/or

wrongful acts of the Defendants, the decedent experienced severe pain, suffering, and

mental anguish during the years prior to his death.

51.     In addition, the decedent's estate lost the probable future earnings and any

other economic and noneconomic damages recoverable under the applicable District of

Columbia law, and the minor children of the decedent lost the care, comfort, education,

guidance and support and all other damages recoverable under the applicable District of

Columbia law.

WHEREFORE, the Plaintiff Joseph Wayne Eastridge demands judgment against

Defendants United States of America, Martin J. Linsky and Joseph J. Guerrieri, jointly

and severally, in the full and just amount of Fifty Million Dollars, ($50,000,000.00) plus interest and costs.

WHEREFORE, the Plaintiff Joseph Nick Sousa demands judgment against Defendants United States of America, Martin J. Linsky and Joseph J. Guerrieri, jointly and severally, in the full and just amount of Fifty Million Dollars, ($50,000, 000.00) plus interest and costs.

WHEREFORE, the Plaintiff Paul Zukerberg, as the Personal Representative of the Estate of Salvatore Infantolino a.k.a. Michael A. Damien, deceased, demands judgment against the Defendants in the full and just amount of Fifty Million Dollars, ($50,000,000.00) plus interest and costs.

WHEREFORE, the Plaintiffs Joseph Wayne Eastridge and Joseph Nick Sousa, and Paul Zukerberg, as the Personal Representative of the Estate of Salvatore Infantolino a.k.a. Michael A. Damien seek disbursements, costs, and attorneys' fees under 42 U.S.C. §§1983, 1988; and for such other and further relief as to this Court may seem just and proper.

## JURY DEMAND

The Plaintiffs request a trial by jury on all of the above claims.

Respectfully submitted,

REGAN, ZAMBRI & LONG, PLLC

By: _____
Patrick M. Regan, Esquire
Salvatore J. Zambri, Esquire
Paul J. Cornoni, Esquire
1919 M. Street, N.W. Suite 350
Washington, DC  20036-3521
Ph:  (202) 463-3030
*Co-Counsel for Plaintiff*

By: _____
John Zwerling, Esquire
Zwerling, Leibig & Moseley, PC
108 N. Alfred Street
Alexandria, Virginia  22314
Ph:  (703) 684-8000
*Co-Counsel for Plaintiff*