```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
```

_____
                                    )
JOSEPH WAYNE EASTRIDGE, et al.,     )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )   Civil Action No. 06-448 CKK
                                    )
UNITED STATES OF AMERICA, et al.,   )
                                    )
        Defendants.                 )
_____)

## REPLY TO PLAINTIFFS' OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Defendants, through the undersigned counsel, hereby file this reply to Plaintiffs' Opposition To Defendants' Motion To Dismiss ("Pls.' Opp.").[1] Plaintiffs simply cannot overcome the dispositive authorities establishing that both absolute and sovereign immunity bar their claims.[2] In addition, when confronted with the fact that their common law tort claims are barred by the Federal Tort Claims Act, Plaintiffs explicitly

---

[1] The Memorandum Of Points And Authorities In Support Of Plaintiffs' Opposition To Defendants' Motion To Dismiss does not have separate page numbering. Thus, when referring to Plaintiffs' Opposition, Defendants have utilized the page at the top of the page, which was inserted by the Court's docketing system for Docket No. 9. For instance, the first page of Plaintiffs' memorandum (identified on the filed document as "Page 4 of 23") would be cited as "Pls.' Opp. at 4".

[2] There is one issue raised in Defendants' Motion To Dismiss which addressed by Plaintiffs after the filing of the motion to dismiss. Plaintiffs have now served the individual defendants in the case. See Pls.' Opp. at 10-11.

disavow those claims. Pls.' Opp. at 17-18. Thus, only constitutional claims for money damages are presented based on the prosecutors' application of Brady v. Maryland, 373 U.S. 83 (1963), in a prosecution that occurred more than 30 years ago. See Pls.' Opp. at 17-18; Complaint at 16-17. We respectfully submit that all of Plaintiffs' claims are clearly subject to dismissal.

As explained below, and as previously set forth in support of Defendants' Motion To Dismiss, the individual capacity claims against the two former Assistant United States Attorneys are barred by absolute prosecutorial immunity. Hartman v. Moore, ___ U.S. ___, ___, 126 S.Ct. 1695, 1700 (Apr. 26, 2006); Imbler v. Pachtman, 424 U.S. 409, 420 (1976); Moore v. Valder, 65 F.3d 189, 192-94 (D.C. Cir. 1995). The claims against the United States and against the individual defendants in their official capacities are barred by sovereign immunity. See FDIC v. Meyer, 510 U.S. 471, 478 (1994) (a constitutional tort claim is not cognizable under the FTCA); Settles v. U.S. Parole Commission, 429 F.3d 1098, 1106 (D.C. Cir. 2005) (sovereign immunity bars Section 1983 claims against a government agency).

**I.   Plaintiffs Fail to Distinguish Any in the Unbroken Line of Precedents Providing Absolute Immunity to Defendant Former Federal Prosecutors From Plaintiffs' Action Against Them**

The gravamen of Plaintiffs' Complaint is that "[d]uring the trial", which began in November of 1975 and ended with

Plaintiffs' convictions in January 1976, Defendant prosecutors "violated the constitutional rights of Plaintiffs," by allegedly failing to turn over certain grand jury testimony in accordance with <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963).  Complaint ¶¶ 14, 15, 18; <u>accord</u> Pls.' Opp. at 5-6 ("<u>During the trial</u>, Defendants ... violated the constitutional rights of Plaintiffs.") (emphasis added).  Well-settled case law holds that there is absolute prosecutorial immunity for precisely the advocacy function challenged here.  However, in their opposition to Defendants' Motion To Dismiss, Plaintiffs fail to discuss, much less distinguish any of that authority.

   Plaintiffs simply ignore the Supreme Court's holding in <u>Imbler</u> v. <u>Pachtman</u>, 424 U.S. 409 (1976), and its progeny that a prosecutor enjoys absolute immunity when he acts "as an advocate" engaged in activities "intimately associated with the judicial phase of the criminal process." <u>Imbler</u>, 424 U.S. at 430.  The Supreme Court in <u>Imbler</u> specifically held that a prosecutor's conduct in applying <u>Brady</u> is advocatory activity subject to absolute immunity.  We submit that <u>Imbler</u> is dispositive of the case at bar.

   The plaintiff in <u>Imbler</u> had initiated a civil action against the state prosecutor under 42 U.S.C. § 1983, after succeeding in overturning his conviction on the grounds that the prosecutor had withheld exculpatory evidence in violation of <u>Brady</u> and had

presented false evidence during the trial. Id. at 413 & n.7. The Supreme Court found that absolute immunity shielded the prosecutor from suit based upon the conduct alleged. Id. at 430.

Justice Powell delivered the opinion of the Court and discussed the rationale for the doctrine of absolute prosecutorial immunity:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from the public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

Id. at 423.

The Court further found that doctrine of absolute immunity bars the very cause of action that Plaintiffs have asserted here:

> We conclude that the considerations outlined above dictate the same absolute immunity under § 1983 that the prosecutor enjoys at common law. To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice.

Id. at 427-428.

Subsequently, the Court of Appeals for the District of Columbia Circuit held that, "it follows from Imbler that the failure, be it knowing or inadvertent, to disclose material exculpatory evidence before trial [] falls within the protection afforded by absolute prosecutorial immunity." Moore v. Valder, 65 F.3d 189, 194 (D.C. Cir. 1995). Accordingly, in the Moore case, the Court of Appeals affirmed the dismissal of claims against a prosecutor for allegedly concealing exculpatory evidence in that case, from the grand jury. Id. The court found that the challenged conduct was plainly advocatory in nature and therefore subject to absolute immunity. Id.; see also Hartman v. Moore, 126 S. Ct. at 1700 (noting that claims against prosecutor were dismissed "in accordance with the absolute immunity for prosecutorial judgment").

This Court has repeatedly followed Imbler and Moore, holding that claims alleging prosecutorial violations of Brady are barred by absolute immunity. See Hazel v. Reno, 20 F. Supp. 2d 21, 24 n.3 (D.D.C. 1998) ("absolute immunity insulates prosecutors from suits despite allegations of ... knowingly failing to disclose Brady material before trial"); see also Zandford v. Nat'l Ass'n of Securities Dealers, Inc., 30 F. Supp. 1, 15 (D.D.C. 1998); Davidson v. United States, 2005 WL 623228 (D.D.C. Mar. 17, 2005). This case falls squarely within the ambit of Imbler and its

progeny. The focus of Plaintiffs' Complaint concerns the Defendant prosecutors' exercise of discretion in applying <u>Brady</u> during their prosecution. It is well settled that such conduct is clearly within the advocatory functions of a prosecutor, which are afforded absolute immunity.

Unable to distinguish any in the long and unbroken line of cases directly on point, Plaintiffs resort to arguing instead that the conduct challenged here should be considered "investigatory," and therefore should not be afforded absolute immunity. Plaintiffs strain to argue that here the prosecutors' decision in applying <u>Brady</u> was somehow investigatory because "they received <u>Brady</u> evidence while investigating a criminal offense." Pls.' Opp. at 8. This argument is baseless. The constitutional violation asserted here does not involve how evidence was acquired, but rather the alleged failure to provide grand jury testimony to the defense "[d]uring the trial." Complaint ¶ 14. Under all applicable precedent, it is clear beyond doubt that the prosecutor's decision-making under <u>Brady</u> is advocatory, not investigatory, and well within the scope of absolute prosecutorial immunity.

With the entire weight of the relevant case authority against them, Plaintiffs misplace their entire reliance on precedents involving police officers' alleged failures to provide exculpatory material to the prosecution. <u>Sanders</u> v. <u>English</u>, 950

F.2d 1152, 1162 (5th Cir. 1992) (police officer allegedly fails to disclose exculpatory evidence to prosecutor); Goodwin v. Metts, 885 F.2d 157, 161 (4th Cir. 1989) (same), overruling in part recognized by Taylor v. Waters, 81 F.3d 429, 436 n.5 (4th Cir. 1996); Bembenek v. Donohoo, 355 F. Supp. 2d 942, 953 (E.D. Wisc. 2005) (same); McMillian v. Johnson, 878 F. Supp. 1473, 1501-02 (M.D. Ala. 1995) (same), aff'd in part, vacated in part, rev'd in part, 88 F.3d 1154 (11th Cir.), amended on reh'g, 101 F.3d 1363 (11th Cir. 1996).  These cases are inapposite.

Indeed, recently this Court distinguished cases involving police officer conduct from those involving a prosecutor's decision-making under Brady.  In Bragdon v. Malone, 425 F. Supp. 2d 1 (D.D.C. 2006), the defendant police officer argued that the absolute immunity afforded to prosecutors accused of Brady violations should be applied to police officers sued for failing to disclose exculpatory evidence.  The Court rejected that argument, distinguishing between a police officer's "'*acquiring* evidence which might be used in a prosecution,' which is not protected [by absolute immunity], and the '*organization, evaluation*, and *marshalling* of such evidence' by the prosecutor, which is protected."  Id. at 6 (quoting Moore, 65 F.3d at 194). Here, it is clear beyond dispute that Plaintiffs' Complaint challenges an alleged "failure to turn over Brady material to the defense team," which is clearly "[o]ne of the functions protected

by prosecutorial immunity." Bragdon, 425 F. Supp. 2d at 4. Plaintiffs' reliance on cases involving the gathering of evidence by police officers is wide of the mark.[3/]

Accordingly, Defendants respectfully submit that this action is barred by the doctrine of absolute prosecutorial immunity and should be dismissed.

## II. Sovereign Immunity Bars This Action Against the United States and the Individual Defendants in Their Official Capacities.

Plaintiffs have also failed to show that the United States has waived its sovereign immunity to permit this cause of action. Plaintiffs' acknowledge that "sovereign immunity is normally enveloping", but ask the Court to "disregard this policy" in this case. Pls.' Opp. at 14. Plaintiffs' request is wholly without merit.

First, it is well settled and undisputed that the United States is immune from suit absent an "unequivocally expressed" waiver by statute. United States v. King, 395 U.S. 1, 4 (1969);

---

[3/]   Plaintiffs also mistakenly rely on two cases from other jurisdictions holding that qualified immunity, not absolute immunity, applies to a prosecutor's failure to preserve exculpatory evidence. Henderson v. Fisher, 631 F.2d 1115 (3d Cir. 1980); Wilkinson v. Ellis, 484 F. Supp. 1072 (E.D. Pa. 1980). These cases are inapposite because plaintiffs do not allege that Defendant prosecutors failed to preserve exculpatory evidence, but rather that they did not turn the evidence over during trial. Indeed, these cases specifically distinguish prosecutors' administrative functions in preserving evidence from their advocatory functions in applying Brady, which are afforded absolute immunity. Henderson, 631 F.2d at 1120; Wilkinson, 484 F. Supp. at 1083.

see also United States v. Mitchell, 445 U.S. 535, 538 (1980).  It is also undisputed that a suit for money damages against federal officers acting in their official capacity is governed by the same principles.  Clark v. Library of Congress, 750 F.2d 89, 102-04 (D.C. Cir. 1989).

In their quest to have this Court "disregard" the vital sovereign immunity doctrine, plaintiffs rely exclusively on 42 U.S.C. § 1983.  See Pls.' Opp. at 14-17.  That statute, however, does not waive federal sovereign immunity for the federal government or federal officers.  See Settles v. U.S. Parole Commission, 429 F.3d 1098, 1106 (D.C. Cir. 2005) (sovereign immunity bars Section 1983 claims against a government agency).  Only those acting "under color of" state law are within the scope of Section 1983, and neither the United States nor its officers are such actors.  See Williams v. United States, 396 F.3d 412 (D.C. Cir. 2005); McCord v. Bailey, 636 F.2d 606, 613 (D.C. Cir. 1980).

Plaintiffs contend that sovereign immunity should be "disregarded" for the United States and federal officials operating within the District of Columbia in connection with enforcement of District of Columbia law.  However, it is clear that there is no statutory basis for such a waiver.  Assistant U.S. Attorneys act "under color of" federal law.  See 28 U.S.C. §§ 541, 542(4). Plaintiffs counter with the hypothetical argument

-9-

that if their prosecution had been in another jurisdiction, it likely would have been undertaken by a state or municipality subject to Section 1983, and suggest that it must follow that since the prosecution was in the District of Columbia, Section 1983 should apply to the federal government.  See Pls.' Opp. at 15-17.  Without attempting to unravel this fiction, it suffices to say that the courts have specifically held otherwise.  See Williams, 396 F.3d at 416; Community for Creative Non-Violence v. Unknown Agents of the United States Marshals Service, 791 F. Supp. 1, 2 n.1 (D.D.C. 1992).  Plaintiffs offer no contrary authority.[4]

---

   [4]   Plaintiffs also concede that Section 1983 "does not explicitly define the United States as a 'person' free to be sued for civil rights and constitutional violations ...," but argue that it should be applied anyway because to hold otherwise "would severely restrict or impede the purpose of this important statute."  Pls.' Opp. at 15-16.  Whatever Plaintiffs may feel the statute should include, its language does not include the federal government in its reach.  And, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  Lane v. Peña, 518 U.S. 187, 192 (1996).

> Waiver of the Government's sovereign immunity, to be effective, must be "unequivocally expressed".  Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980), and United States v. King, 395 U.S. 1, 4 (1969)).  Contrary to respondent's suggestion, moreover, they are not generally to be "liberally construed."

United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992).

In short, Plaintiffs cannot identify any statute by which the sovereign immunity of the United States has been waived with regard to their claims, which must therefore be dismissed.

### III. Plaintiff Zuckerberg's Wrongful Death and Survival Actions are Fatally Defective

The Defendants demonstrated in their opening brief that Counts IV and V of the Complaint are independently barred because, to the extent they are cast as common law tort claims, plaintiff Zuckerberg has not timely exhausted administrative remedies pursuant to the Federal Tort Claims Act ("FTCA").[5/]  In addition, Mr. Zuckerberg has not shown that he is a real party in interest under Fed. R. Civ. P. 17, and therefore lacks standing because he has not been appointed as a representative  See Complaint, ¶ 7 (noting that Mr. Zuckerberg "is in the process of being appointed as a Personal Representative of the estate of Salvatore Infontalino a.k.a. Michael Damien").  See also Mem. Supp. Mot. Dismiss at 15-19.  Finally, a close reading of the Complaint reveals that Plaintiffs have failed to even contend that the alleged wrongful death was proximately caused by any of the Defendants.  Id. at 20-21.

---

[5/]  As indicated in Defendants' opening brief, the United States has been substituted as the sole defendant for such claims by virtue of a certification under 28 U.S.C. § 2679(d).  See Memorandum Of Points And Authorities In Support Of Defendants' Motion To Dismiss ("Mem. Supp. Mot. Dismiss") at 2, 16.

-11-

Plaintiff responds first by now denying that these counts involve common law torts such as negligence. Pls.' Opp. at 17 ("defendants have improperly concluded Plaintiffs' Complaint as one for negligence"). But the Complaint clearly says just that. See e.g. Complaint ¶¶ 47-48 ("the intentional, unconstitutional negligent and/or wrongful acts"; Complaint ¶¶ 50 (describing "the decedent's right of action for wrongful death and negligent conduct").

Notwithstanding, Plaintiff's disavowal of these claims, they must be dismissed for failure timely to exhaust administrative remedies under the FTCA or because those claims have been abandoned. Moreover, to the extent Plaintiff Zuckerberg now wishes to recast these counts as constitutional claims, they are barred by the doctrine of absolute prosecutorial and sovereign immunity as set forth above.

Finally, Mr. Zuckerberg's failure to show he has any standing in this case aside, the Complaint nowhere alleges that Mr. Damien's death in 2002 was proximately caused by his criminal conviction in 1976. Plaintiff alleges only that Mr. Damien "was falsely convicted ... and was subsequently imprisoned where he died." Complaint, ¶ 47. That does not even approach being an allegation of proximate causation. The assertion that this Plaintiff, who has not shown that he is Mr. Damien's appointed representative, needs discovery in order to even allege causation

-12-

for his own claim is simply untenable.  See Mayfield v. Meese, 669 F. Supp. 1123, 1131 (D.D.C. 1987) ("Plaintiff must ... allege facts showing causation").

Plaintiffs do concede that a motion under Fed. R. Civ. P. 12 is "for the purpose of testing the sufficiency of the Complaint." Pls.' Opp. at 20 (citing Hall v. Virginia, 285 F.3d 421 (4th Cir. 2004)).  Defendants submit that Plaintiffs have utterly failed to show that the allegations of the Complaint can pass the test or that the Complaint can survive dismissal, while Defendants have identified fatal deficiencies in the Complaint.

## **CONCLUSION**

In light of the foregoing, it is respectfully submitted that all of Plaintiffs' claims should be dismissed.

                        Respectfully submitted,

                        _____
                        KENNETH L. WAINSTEIN, DC Bar #451058
                        United States Attorney

                        _____
                        RUDOLPH CONTRERAS, DC Bar #434122
                        Assistant United States Attorney

                        _____
                        W. MARK NEBEKER, DC Bar #396739
                        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service of the foregoing Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss and supporting memorandum has been made through the Court's electronic transmission facilities on this 26th day of July, 2006.

_____
W. MARK NEBEKER, D.C. Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D. C.  20530
(202) 514-7230