UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH WAYNE EASTRIDGE, *et al.*,

    Plaintiffs,

    v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

Civil Action No. 06-448 (CKK)

## MEMORANDUM OPINION
(February 12, 2007)

In January 1976, Joseph Wayne Eastridge, Joseph Nick Sousa and Michael A. Damien

were convicted in the Superior Court of the District of Columbia of first-degree murder, while

armed, and thereafter were sentenced to twenty years to life.[1]  On May 26, 2005, Judge Rosemary

M. Collyer, United States District Court Judge for the District of Columbia, granted Plaintiffs

Eastridge and Sousa's Petition and Supplemental Petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2241.[2]  In so doing, Judge Collyer found, *inter alia*, that the prosecution's failure to

produce certain Grand Jury testimony during Plaintiffs' 1976 trial violated Plaintiffs Eastridge

and Sousa's due process rights, as interpreted in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194,

---

[1] This action is, in fact, brought by Paul Zukerberg, Esq., as Personal Representative of the Estate of Salvatore Infantolino, a/k/a Michael A. Damien. However, for ease of reference the Court shall refer to Messrs. Eastridge, Sousa, and Damien collectively as "Plaintiffs".

[2] Mr. Damien participated in the filing of the original Petition for a writ of habeas corpus eventually granted by Judge Collyer, however Mr. Damien passed away between the filing of the initial Petition in December 2000 and the filing of the Supplemental Petition in April 2005. As such, Judge Collyer's opinion did not specifically encompass Mr. Damien's conviction. Nevertheless, it appears that Judge Collyer's findings would apply equally to Mr. Damien's conviction.

10 L. Ed. 2d 215 (1963).

In the instant action, Plaintiffs seek monetary damages from Defendants – the United States of America and the two former Assistant United States Attorneys for the District of Columbia, Joseph J. Guerrieri, Jr. and Martin J. Linsky,[3] who were the prosecutors in Plaintiffs' 1976 trial – based on Defendants' alleged violations of Plaintiffs' civil rights under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. Defendants have filed a motion to dismiss Plaintiffs' Complaint, which Plaintiffs oppose. Upon a searching review of Defendants' Motion to Dismiss, Plaintiffs' Opposition, Defendants' Reply, the relevant statutes and case law, Judge Collyer's May 26, 2005 Opinion, and the entire record herein, the Court shall grant Defendants' motion to dismiss and shall therefore dismiss Plaintiffs' Complaint in its entirety.

## I: BACKGROUND

In January 1976, Plaintiffs Joseph Wayne Eastridge, Joseph Nick Sousa, decedent Michael A. Damien, and non-party Stephen C. Jones were convicted in the Superior Court for the District of Columbia of first-degree murder, while armed, for the stabbing death of Johnnie Battle. Compl. ¶ 11. A fifth co-defendant, Richard C. Richter, was convicted of assault. *Id.* Plaintiffs were prosecuted by Defendant, the United States of America, by and through Defendant Assistant United States Attorneys Joseph J. Guerrieri and Martin J. Linsky. *Id.*; ¶ 14.

At trial, the Government's theory of the case was that a group associated with a motorcycle gang, the Pagans, was involved in a racially-charged confrontation with three black

---

[3] Plaintiffs' Complaint names Defendants Guerrieri and Linsky in both their individual and official capacities. *See* Compl., Caption.

2

men, including Mr. Battle, outside the Godfather Lounge in Washington, D.C. *Id.* ¶ 19; *see also,*
*Eastridge v. United States*, 372 F. Supp. 2d 26, 28-29 (D.D.C. 2006) (Collyer, J.) (granting
Plaintiffs' Petition and Supplemental Petition for Writ of Habeas Corpus). After a series of
verbal exchanges, Mr. Battle retrieved a handgun from his car and fired into the group, wounding
one of the Pagans. Compl. ¶ 19; *Eastridge*, 372 F. Supp. 2d at 29. Mr. Battle fled on foot down
Wisconsin Avenue. Compl. ¶ 19; *Eastridge*, 372 F. Supp. 2d at 29. Plaintiffs and Mr. Jones
allegedly gave chase, with their knives drawn, chasing Mr. Johnnie Battle up to Wisconsin
Avenue, where Mr. Battle was seen tripping on a curb, falling backwards, with his arms up, and
being stabbed repeatedly by Plaintiffs and Mr. Jones. Compl. ¶ 19; *Eastridge*, 372 F. Supp. 2d at
29.

Plaintiffs' convictions were affirmed on appeal by the District of Columbia Court of
Appeals. *Eastridge*, 372 F. Supp. 2d at 43. In 1981, Plaintiff Eastridge filed a motion for a new
trial in the District of Columbia Superior Court, which was denied without an evidentiary
hearing. *Id.* That denial was affirmed by the District of Columbia Court of Appeals. *Id.* In
September 1983, Plaintiff Damien filed a *pro se* Motion to Vacate Judgment and Sentence in the
Superior Court, which was also denied. *Id.* In April 1995, Plaintiffs Eastridge and Sousa filed a
joint Motion to Vacate Convictions and Request for Evidentiary Hearing in the Superior Court,
requesting that the court vacate their convictions based on new evidence and actual innocence.
*Id.* The Superior Court determined that Plaintiffs Eastridge and Damien's new evidence claims
were barred by the applicable statute of limitations, and that the new evidence did not outweigh
the testimony presented at trial. *Id.* at 43-44. The Court of Appeals affirmed in a divided
decision, finding that Plaintiffs Eastridge and Damien's new evidence claims were time-barred.

3

*Id.* at 44.

In December 2000, Plaintiffs filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, which the United States opposed. *Id.* at 45. After briefing and oral argument, Judge Collyer ordered an evidentiary hearing "to determine whether, in light of new evidence, [Plaintiffs] were entitled to a substantive review of their constitutional claims." *Id.* Judge Collyer conducted this three-day evidentiary hearing in December 2004, "at which [Plaintiffs Eastridge and Sousa] tried to disprove the Government's theory of the case at trial – that [Plaintiffs Eastridge and Sousa] chased Mr. Battle on foot with "knives drawn." *Id.* Plaintiffs Eastridge and Sousa also "sought to demonstrate that, given all the evidence available now, no reasonable juror could find them guilty of the murder of Mr. Battle." *Id.* at 46. During this three-day hearing, Plaintiffs Eastridge and Sousa elicited testimony from new witnesses and new evidence from witnesses who appeared at trial, but whose testimony was limited or foreclosed by virtue of an evidentiary rule imposed by the judge during Plaintiffs' 1976 trial that prevented Plaintiffs' lawyers from "making arguments or introducing evidence through direct or cross-examination that could 'bring into play any other defendant.'" *Id.* at 35, 46.

Among the witnesses who testified during the December 2004 evidentiary hearing was Ms. Pamela Heim. *Id.* at 47. Ms. Heim originally testified for the Government at Plaintiffs' 1976 trial, including testifying that Mr. Charles Jennings and Mr. John Wood, two other members of the Pagans, were among the group of gang members at the Godfather Lounge on the night that Mr. Battle was killed and that Messrs. Jennings and Wood were present during the confrontations with Mr. Battle and his companions. *Id.* at 47; Compl. ¶ 22. During the 2004 hearing before Judge Collyer, Ms. Heim was questioned about the Grand Jury testimony of

4

Messrs. Jennings and Wood, which was not provided to the defense for use at trial. *Eastridge*, 372 F. Supp. 2d at 47. Neither Mr. Jennings nor Mr. Wood testified at trial, however, "Mr. Jennings told the Grand Jury that, after [a prior incident that evening], both he and Mr. Wood decided not to go to the Godfather." *Id.*; Compl. ¶ 21. "Mr. Wood's Grand Jury testimony was substantially similar, adding that Mr. Jennings had driven him home and that he was in "no way involved in any of the events that took place at or near the Godfather Lounge." *Eastridge*, 372 F. Supp. 2d at 47; Compl. ¶ 21. In response to questioning at the December 2004 evidentiary hearing, Ms. Heim reaffirmed her trial testimony. *Eastridge*, 372 F. Supp. 2d at 47. Ms. Heim also testified at the December 2004 evidentiary hearing that after the incident at the Godfather Lounge, she returned to the Virginia home of the leader of the Pagans, where Mr. Jennings and another member of the gang later arrived "looking 'distraught' and stated that they 'got to lay low' and 'that they had run all the way from D.C.'" *Id.* at 48 (quoting Evidentiary Hearing Transcript). This testimony was not allowed at Plaintiffs' 1976 trial based on the trial judge's evidentiary rule. *Id.*

In her May 26, 2005 Memorandum Opinion granting Plaintiffs Eastridge and Sousa's Petition for a writ of habeas corpus, Judge Collyer reviewed in great detail the history of Plaintiffs' 1976 trial and the evidence and testimony presented at the 2004 evidentiary hearing, as well as a number of documents that Plaintiffs Eastridge and Sousa submitted in support of their Petition. *Id.* at 51-52. These included: (1) an affidavit from Plaintiffs' co-defendant, Mr. Jones, "recanting his trial testimony, admitting his role in the murder of Mr. Battle, and affirming that Messrs. Eastridge, Sousa, and Damien did not participate in the murder. The affidavit identifies Messrs. Jennings and Wood (both deceased), an unnamed individual, and Mr. Jones as the

5

individuals who killed Mr. Battle;" (2) affidavits from two former Pagans with criminal records "stating that in the 1970s Mr. Wood confessed to his role in the murder," implicated Messrs. Jennings and Jones in the murder, and professed Plaintiffs' innocence; and (3) an affidavit from Mr. Richter, also a co-defendant in Plaintiffs' 1976 trial "attesting that Mr. Wood confessed his role in the murder to him," that Mr. Jennings told him that he threw his knife away as he fled from the scene of the murder, and that Mr. Jennings desired to turn himself in shortly before he died. *Id.* at 51.

Based on the entirety of this record, Judge Collyer concluded that "this is the rare case in which Petitioners can prove their 'actual innocence' of the crime charged as well as violations of their constitutional rights at trial." *Id.* at 29; Compl. ¶ 17. Specifically, Judge Collyer found that Plaintiffs Eastridge and Sousa were "actually innocent" of the murder of Mr. Battle both as principals and as aiders and abettors. *Eastridge*, 372 F. Supp. 2d at 53-56. Judge Collyer continued to examine whether Plaintiffs Eastridge and Sousa's "actual innocence" was accompanied by the requisite "constitutional error that probably resulted in their conviction." *Id.* at 56. In so doing, Judge Collyer found that the evidentiary rule imposed by the trial judge at Plaintiffs' 1976 trial violated Plaintiffs Eastridge and Sousa's Fifth Amendment right to shift the blame to others and also violated their Sixth Amendment right to confront and fully cross-examine all Government witnesses against them. *Id.* at 59.

In addition, Judge Collyer found that the "prosecution's failure to produce the Grand Jury testimony of Messrs. Wood and Jennings was a constitutional violation that prejudiced [Plaintiffs Eastridge and Sousa] at trial." *Id.* at 59. Judge Collyer based this finding on *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, in which the Supreme Court held that "the suppression by the

6

prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Id.*, 3373 U.S. at 87, 83 S. Ct. 1194. Judge Collyer determined that the Grand Jury testimony of Messrs. Jennings and Wood was both exculpatory and material, stating:

> As a general matter, false exculpatory statements can produce an inference of guilt. The combination of Ms. Heim's testimony that Mr. Wood and Mr. Jennings were present at the Godfather; that Mr. Jones was among those who chased Mr. Battle; and that Barber and Jennings ran on foot to Virginia, arriving distraught and wanting to hide, would have materially supported [Plaintiffs Eastridge and Sousa's] trial argument that the unindicted 'phantoms' (no longer phantoms, but identified persons) were more likely the murderers. Had they been aware of the false testimony, defense counsel might have presented Ms. Heim with more-particularized questions about Mr. Wood and Mr. Jennings. Of course, they could also have called both men to testify and to confront their own Grand Jury testimony in an effort to show that persons other than [Plaintiffs Eastridge and Sousa] could have committed the murder.

*Id.* at 60; Compl. ¶ 28. Judge Collyer further found that "the prosecution was aware of" the discrepancy between Messrs. Jennings and Wood's Grand Jury testimony and the trial record, "but did not produce the Grand Jury transcripts." *Id.* at 59.

Based largely on Judge Collyer's May 26, 2005 Memorandum Opinion, Plaintiffs filed their five-count Complaint on March 10, 2006, alleging that Defendants violated Plaintiffs "civil rights, including substantive and due process rights, and all other civil rights guaranteed to Plaintiffs under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the Constitution of the United States of America." Compl. ¶ 1. Count One is brought pursuant to 42 U.S.C. § 1983 against the United States, as well as Defendants Guerrieri and Linsky in their individual and official capacities, and alleges that Defendants "acting deliberately, recklessly and under color of law, withheld and suppressed exculpatory and impeachment evidence from the Plaintiffs" that

resulted in "their wrongful convictions and imprisonments," and violated the Fourteenth
Amendment, as interpreted in *Brady v. Maryland*. *Id.* ¶¶ 33-34. Plaintiffs further allege that
Defendants "engaged in illegal behavior by helping establish or carry out regulations, customs,
ordinances, rules, practices, and/or policies . . . that manifested a deliberate indifference to and
reckless disregard of the rights of the Plaintiffs and other citizens;" that Defendants "deliberately,
recklessly and under color of law violated Plaintiffs' Fourteenth Amendment rights by failing
adequately to investigate the Plaintiffs' claims of innocence;" and that as a "direct and proximate
result of the actions and omissions of the Defendants" Plaintiffs were "denied their right to a fair
trial, were wrongly convicted and imprisoned, and suffered numerous injuries and damages." *Id.*
¶¶ 35-37.

Counts Two and Three are brought pursuant to 42 U.S.C. § 1983 against only the United
States of America. Count Two alleges that the United States "created and maintained a custom,
policy and/or practice of failing to disclose material exculpatory evidence in violation of" *Brady
v. Maryland*, and that this represented an "unconstitutional governmental custom, practice and/or
policy." *Id.* ¶ 40. Count Three alleges that the United States also maintained a "custom, policy
and/or practice of failing to adequately train and supervise its employees . . . regarding failing to
disclose material exculpatory evidence in violation of" *Brady v. Maryland*, and that this also
represented an "unconstitutional municipal custom, practice and/or policy." *Id.* ¶ 43.

Counts Four and Five are brought by the Estate of Michael A. Damien and do not specify
which Defendants they are brought against. Count Four asserts a claim for Wrongful Death,
alleging that "as a direct and proximate result of the intentional, unconstitutional negligent and/or
wrongful acts of the Defendants, the decedent was falsely convicted of a crime for which he was

innocent, and was subsequently imprisoned, where he died on December 10, 2002, while at the Atlanta Federal Penitentiary." *Id.* ¶ 47. Count Five asserts a claim under the District of Columbia Survival Act, alleging that "the decedent's right of action for wrongful death and negligent conduct against the Defendants, survives in favor of" his estate. *Id.* ¶ 50.

On May 22, 2006, Defendants filed a Motion to Dismiss Plaintiffs' Complaint, in which they assert a number of arguments. First, Defendants argue that Plaintiffs failed to effect proper service on Defendants Guerrieri and Linsky, in their individual capacities, and that as a result this Court lacks personal jurisdiction over those Defendants. Defs' Mot. to Dismiss at 3-6. Second, Defendants argue that Defendants Guerrieri and Linsky are not subject to suit in their individual capacities because they are shielded by absolute prosecutorial immunity. *Id.* at 6-9. Third, Defendants argue that Counts One through Three are barred as against the United States by the doctrine of sovereign immunity and because 42 U.S.C. § 1983 does not apply to federal officials acting under color of federal law. *Id.* at 9-15. In addition, Defendants assert a number of challenges to the claims brought by the estate of Mr. Damien. *Id.* at 15-21.

Plaintiffs filed their Opposition to Defendants' Motion to Dismiss on June 30, 2006, arguing that all of their claims were properly brought. *See generally* Pls' Opp'n to Defs' Mot. to Dismiss (hereinafter "Pls' Opp'n"). Among other arguments, Plaintiffs assert that they have properly served Defendants Linsky and Guerrieri, in their individual capacities, within the time afforded by the Federal Rules of Civil Procedure. *Id.* at 10-11. Defendants acknowledge as much in their Reply, filed on July 26, 2006, but otherwise maintain that Plaintiffs' Complaint must be dismissed. Reply to Pls' Opp'n to Defs' Mot. to Dismiss (hereinafter "Defs' Reply") at 1 n.2. In addition, on August 9, 2006, Plaintiffs filed a motion for leave to file a sur-reply, along

with a proposed sur-reply. Pls' Mot. for Leave of Ct. to File Sur-Reply. Defendants opposed

Plaintiffs' motion for leave to file a sur-reply on August 17, 2006.

## II: LEGAL STANDARDS

### A.    Rule 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule

12(b)(1). In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not

prevail "unless plaintiffs can prove no set of facts in support of their claim that would entitle

them to relief." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A court may appropriately dispose of a case

under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed facts

evidenced in the record, or the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193,

198 (D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 139, 152

n.1 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion

to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v.*

*Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the

complaint and is central to plaintiff's claim, such a document attached to the motion papers may

be considered without converting the motion to one for summary judgment") (citing *Greenberg*

*v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 515 (6th Cir. 1999)). At the stage in litigation

when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff

should receive the benefit of all favorable inferences that can be drawn from the alleged facts.

*EEC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In spite of the

favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's

burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm*

*Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

      B.       *Rule 12(b)(6)*

      "In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike

resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most

favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from

well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans*

*Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608

(D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must

be granted the benefit of all inferences that can be derived from the facts alleged."). While the

court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn

by the plaintiff[] if such inferences are not supported by the facts set out in the complaint."

*Kowal*, 16 F.3d at 1276. Moreover, the court is not bound to accept the legal conclusions of the

non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited

to considering facts alleged in the complaint, any documents attached to or incorporated in the

complaint, matters of which the court may take judicial notice, and matters of public record. *See*

*St. Francis Xavier Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala*, 988

F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not

be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain

contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C.

Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (when a motion to dismiss is based

on the complaint, the facts alleged in the complaint control).

## III: DISCUSSION

In their Motion to Dismiss, Defendants assert, *inter alia*, that Counts One through Three of Plaintiffs' Complaint must be dismissed because Defendants Guerrieri and Linsky are entitled to absolute prosecutorial immunity, while Defendant United States is protected from suit by the doctrine of sovereign immunity. In addition, Defendants raise a number of challenges to Counts Four and Five, brought by the estate of Mr. Damien.[4] The Court shall address each of Defendants' arguments in turn.

### A. *Defendants Guerrieri and Linsky are Entitled to Absolute Prosecutorial Immunity in their Individual Capacities*

#### 1. *Allegations Contained in Plaintiffs' Complaint*

Count One of Plaintiffs' Complaint asserts a claim against Defendants Guerrieri and Linsky in both their individual and official capacities, pursuant to 42 U.S.C. § 1983.[5] Defendants

---

[4] Defendants' Motion to Dismiss also asserts that this Court lacks personal jurisdiction over Defendants Guerrieri and Linsky in their individual capacities because, at the time the Motion to Dismiss was filed, Plaintiffs had not properly effected service on them. *See* Defs' Mot. to Dismiss at 3-6. In their Opposition, Plaintiffs note that within the 120-day period afforded for service under Federal Rule of Civil Procedure 4(m), Plaintiffs were informed by Mark Nebeker, Counsel for Defendants, that Defendants Guerrieri and Linsky had authorized Mr. Nebeker to act as their agent in this matter for the purpose of accepting future service. Pls' Opp'n at 10-11. Plaintiffs have attached to their Opposition an Affidavit of Service indicating that they forwarded to Mr. Nebeker a copy of the Summons, Complaint, and the Court's initial Order in this action for each individual and official capacity Defendant, and that Plaintiffs received confirmation from Mr. Nebeker that he had received the materials for each Defendant. *See* Cornoni Aff. of Service. As Defendants concede in their Reply that Plaintiffs have now served Defendants Guerrieri and Linsky in their individual capacities, *see* Defs' Reply at 1 n.2, the Court finds that Defendants' motion to dismiss is moot insofar as it argues that this Court lacks personal jurisdiction over Defendants Guerrieri and Linsky in their individual capacities.

[5] In their motion to dismiss, Defendants argue that Plaintiffs cannot pursue claims against Defendants Guerrieri and Linsky under 42 U.S.C. § 1983 because, according to Defendants,

correctly argue that Defendants Guerrieri and Linsky are shielded from individual liability in this

action by the absolute immunity afforded to prosecutors, and that as a result Plaintiffs' Complaint

must be dismissed with respect to Defendants Guerrieri and Linsky.[6] The Supreme Court has

recognized two kinds of immunity applicable to public officials sued for damages under § 1983.

*Gray v. Poole*, 243 F.3d 572, 575 (D.C. Cir. 2001). The first, qualified immunity, applies to

most public officials, and protects officials for performance of discretionary functions only when

"their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 260,

113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). Some officials, however, perform "special functions

. . . which deserve absolute protection from damages liability." *Buckley*, 509 U.S. at 260, 113 S.

Ct. 2606. Where absolute immunity applies, "an official is protected from all suits attacking

conduct within the scope of the immunity, even if the official is alleged to have acted in bad

faith." *Gray*, 243 F. 3d at 575 (citing *Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995)). In

determining whether absolute immunity applies, the Supreme Court applies a "functional

---

Assistant United States Attorneys for the District of Columbia are federal officials who act
pursuant to federal law, while § 1983 applies only to state officers acting under color of state law.
*See* Defs' Mot. to Dismiss at 12-15. As discussed below, the Court does not reach the issue of
whether Defendants Guerrieri and Linsky are amenable to suit under 42 U.S.C. § 1983, finding
that Plaintiffs' claims are otherwise barred by Defendants Guerrieri and Linsky's absolute
prosecutorial immunity and by the sovereign immunity of the United States. However, as the
parties have addressed Defendants Guerrieri and Linsky's claim of absolute prosecutorial
immunity in the context of a suit for monetary damages under § 1983, the Court will consider it
as such.

[6] Although Defendants do not address the procedural posture in which they make this
argument, the Court shall consider it as one brought under the rubric of Federal Rule of Civil
Procedure 12(b)(6). *See Gray v. Poole*, 243 F.3d 572, 574-75 (D.C. Cir. 2001) (affirming
District Court grant of motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)
where prosecutor was absolutely immune from liability).

approach . . . which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269, 113 S. Ct. 2606 (internal citations and quotations omitted).

In *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976), the Supreme Court held that a criminal prosecutor is immune from a civil suit for damages under § 1983 "in initiating a prosecution and in presenting the State's case." *Id.*, 424 U.S. at 430, 96 S. Ct. 984. In so finding, the Supreme Court looked to the considerations of public policy underlying the common-law rule of absolute immunity for prosecutors, which include "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.*, 424 U.S. at 423, 96 S. Ct. 984. The Supreme Court concluded that these "considerations supported a rule of absolute immunity for conduct of prosecutors that was 'intimately associated with the judicial phase of the criminal process." *Buckley*, 509 U.S. at 270, 113 S. Ct. 2606 (citing *Imbler*, 424 U.S. at 430, 96 S. Ct. 984.

Plaintiffs attempt to avoid the import of absolute prosecutorial immunity by pointing to case law which holds that a prosecutor engaged in investigatory or administrative, as opposed to advocatory, functions is entitled to only qualified immunity. *See* Pls' Opp'n at 11-13 (citing *McSurely v. McClellan*, 697 F.2d 309, 318 (D.C. Cir. 1982)). Specifically, Plaintiffs note that a "prosecutor's failure to preserve evidence" has been held to be non-advocatory. *Id.* at 12-13. However, as Defendants correctly argue, Plaintiffs do not allege that Defendants Guerrieri and Linsky destroyed exculpatory evidence, but rather that they failed to disclose material

14

exculpatory evidence to Plaintiffs during their 1976 trial. Moreover, the two cases that Plaintiffs cite in support of their argument that Defendants Guerrieri and Linsky's conduct was administrative explicitly distinguish the advocatory function carried out by a prosecutor with respect to determining whether evidence should be disclosed pursuant to *Brady* from the prosecutor's administrative function in preserving such evidence. *See Wilkinson v. Ellis*, 484 F. Supp. 1072, 1083 (E.D. Pa. 1980) (". . . we cannot accept [Plaintiff's] characterization of his act as a Brady judgment. Prosecutors make Brady judgments when they decide whether to turn over evidence to the defense . . . Imbler absolutely protects these prosecutorial acts."); *Henderson v. Fisher*, 631 F.2d 1115, 11120 (3rd Cir. 1980).

Plaintiffs further argue that because Defendants Guerrieri and Linsky allegedly received *Brady* material "while investigating a criminal offense," the situation is "no different from the typical scenario wherein a police officer obtains a statement from a witness containing exculpatory information . . . and fails to turn over such *Brady* information to the prosecutor involved in the case." *Id.* at 12. Plaintiffs are correct that prosecutors are only entitled to absolute immunity from suit for advocatory functions and that a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273, 113 S. Ct. 2606. Indeed, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* Instead, an "official seeking absolute immunity bears the burden of showing that such immunity is justified for the *function* in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991). Plaintiffs are also correct that police and other officials are not entitled to absolute immunity for

15

their investigatory actions, including a police officer's alleged failure to turn over exculpatory material. *See, e.g., Bragdon v. Malone*, 425 F. Supp. 2d 1, 4-5 (D.D.C. 2006).

However, in the context of absolute immunity, the D.C. Circuit has drawn a clear distinction between a police officer's role in "*acquiring* evidence which might be used in a prosecution," which is not protected, and the "*organization, evaluation*, and *marshaling* of such evidence by the prosecutor," which is protected." *Moore v. Valder*, 65 F.3d 189, 194-95 ( D.C. Cir. 1995) (emphasis in original) (citing *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987). Indeed, in *Imbler*, the prosecutor was alleged to have knowingly used false testimony and suppressed material exculpatory evidence at trial. *Id.* Moreover, in *Moore v. Valder*, the D.C. Circuit specifically stated that "withholding after indictment information that is subject to disclosure under *Brady v. Maryland* . . . is advocatory." *Id.*, 65 F.3d at 194; *see also Hazel v. Reno*, 20 F. Supp. 2d 21, 24 n.3 (D.D.C. 1998) ("absolute immunity insulates prosecutors from suits despite allegations of . . . knowingly failing to disclose *Brady* material before trial) (citing *Moore v. Valder*). The gravamen of Plaintiffs' Complaint is that Defendants Guerrieri and Linsky failed to produce to Plaintiffs material exculpatory evidence, in violation of *Brady v. Maryland*, and that their "failure to produce the Grand Jury testimony of Messrs. Wood and Jennings was a constitutional violation that prejudiced the Plaintiffs at trial." Compl. ¶ 25. As the Supreme Court and D.C. Circuit precedent makes clear, this conduct is advocatory and thus within the scope of the absolute immunity afforded to Defendants Guerrieri and Linsky as prosecutors.

### 2.    *Allegations Contained in Plaintiffs' Proposed Sur-Reply*

Defendants filed their Reply to Plaintiffs' Opposition on July 26, 2006. Thereafter, on

August 9, 2006, Plaintiffs filed a motion for leave to file a sur-reply, which Defendants oppose.

In their proposed sur-reply, Plaintiffs claim that, after they filed their Opposition to Defendants'

motion to dismiss, they "received correspondence and other materials which unequivocally

demonstrate that Defendants repeatedly failed to disclose <u>Brady</u> material to the Plaintiffs *long*

*after* Plaintiffs' convictions had occurred." *See* Pls' Mot. for Leave of Court to File Sur-Reply at

1 (emphasis in original). Thus, Plaintiffs argue, it "does not carry weight" to claim "that the

individual Defendants were engaged in merely 'advocatory' functions in the *decades* following

the criminal trial in this matter." *Id.* at 1-2 (emphasis in original).

Specifically, in support of their proposed sur-reply, Plaintiffs provide the Court with the

Affidavit of Kate Hill Germond, assistant director of Centurion Ministries, the non-profit

organization that was involved in investigating Plaintiffs' case and pursuing Plaintiffs' appeals

and post-trial motions. Germond Aff. ¶¶ 2-4; *Eastridge*, 372 F. Supp. 2d at 29. In her Affidavit,

Ms. Germond details meetings and correspondence between 1989 and 1991, in which Centurion

Ministries "specifically request[ed] any statements or grand jury testimony of [Messrs.] Jennings,

Woods [sic] and Barber" from the Chief of the Special Proceedings Section of the United States

Attorney's Office for the District of Columbia. Germond Aff. ¶¶ 5, 7. According to Ms.

Germond, the United States Attorney's Office "agreed to review their entire file including any

grand jury materials and share with Centurion Ministries what the prosecutors determined to be

appropriate to share." *Id.* ¶ 8. Ms. Germond attaches to her Affidavit the letter sent by the Chief

of the Special Proceedings Section to Centurion Ministries after this review, in which he states

that the United States Attorney's Office "reviewed all of the files and records which pertain to

the Sousa, Eastridge and Damien case" including Grand Jury materials, and "engaged in a

lengthy telephone conversation with [Defendant]." Germond Aff., Ex. C (6/17/91 Letter to Centurion Ministries). Nevertheless, the United States Attorney's Office concluded that "the version of events provided by [Plaintiffs] is patently incredible" and that, as there was "simply nothing in the record which suggests that innocent men were convicted or that the government's case was in any way tainted by improper or unconstitutional conduct," the United States Attorney's Office would not re-open the prosecution of Plaintiffs' case. *Id.* In their proposed sur-reply, Plaintiffs argue that "[t]his correspondence is undisputed proof that Defendant Guerrieri violated the Plaintiffs' constitutional rights well over fifteen years after the criminal trial in question" and that "Defendants can not [sic] argue that their conduct well after the criminal trial in this matter was solely advocatory." Mem. in Support of Pls' Sur-Reply at 4.

As an initial matter, the Court notes that a "surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002). Here, Plaintiffs' Opposition argues that Defendants Guerrieri and Linsky were not engaged in advocatory functions and their proposed sur-reply seeks to provide additional support for that argument. Plaintiffs' proposed sur-reply therefore does not respond to new matters raised in Defendants' Reply, and is not, strictly speaking, the proper subject of a sur-reply. Moreover, as Defendants point out, Ms. Germond's Affidavit indicates that John Zwerling, counsel for Plaintiffs in this matter, participated in the meetings with the United States Attorney's Office in 1990. Germond Aff. ¶ 7. It therefore appears that the information contained in Plaintiffs' proposed sur-reply may have been readily available to Plaintiffs when they filed their Opposition to Defendants' motion to dismiss. Nevertheless, the Court will address the

18

substance of Plaintiffs' sur-reply, as it does not alter this Court's conclusion that Defendants

Guerrieri and Linsky are entitled to absolute prosecutorial immunity for allegedly withholding

material exculpatory evidence.

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S.

Ct. 2250, 101 L. Ed. 2d. 40 (1988) (citations omitted).  To act under color of state law, "the

defendant in a § 1983 action [must] have exercised power 'possessed by virtue of state law and

made possible only because the wrongdoer is clothed with the authority of state law.'"  *Id.*

(quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 2d 1368 (1941)).

Plaintiffs' proposed sur-reply does not strengthen their claims pursuant to § 1983 because, as

Defendants note in their Opposition to Plaintiffs' motion for leave to file their sur-reply,

Defendant Guerrieri left the employ of the United States Attorney's Office in 1977.  Defs' Opp'n

to Pls' Mot. for Leave to File Sur-Reply at 4; *see also* http://www.thelaborers.net/

constitutions/guerrieri_joseph.htm.  As a result, at the time of Defendant Guerrieri's 1991

telephone conversation with the United States Attorney's Office, Defendant Guerrieri had been a

private citizen, and not a state actor, for fourteen years.  Defendant Guerrieri's actions in 1991

therefore cannot form the basis for a claim pursuant to 42 U.S.C. § 1983, and Plaintiffs' proposed

sur-reply does not change this Court's conclusion that Count One of Plaintiffs' Complaint fails to

state a claim against Defendants Guerrieri and Linsky in their individual capacities.[7]

---

[7] In addition, the Court notes that the response letter from the Chief of the Special
Proceedings Section, on which Plaintiffs' proposed sur-reply is grounded, states only that the
United States Attorney's Office "engaged in a lengthy telephone conference with Joseph

B.    *Sovereign Immunity Bars Plaintiffs' Constitutional Tort Claims Against the
United States and Against Defendants Guerrieri and Linsky in Their Official
Capacities*

Count One of Plaintiffs' Complaint is also brought against Defendants Guerrieri and

Linsky in their official capacities, as well as against the United States. In addition, Counts Two

and Three of Plaintiffs' Complaint assert further claims under 42 U.S.C. § 1983, solely against

the United States. However, as Defendants correctly argue, all of these claims are barred by the

doctrine of sovereign immunity.

"It is elementary that the United States, as sovereign, is immune from suit save as it

consents to be sued, and the terms of its consent to be sued in any court define that court's

jurisdiction to entertain that suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349,

63 L. Ed. 2d 1349 (1980) (citation omitted). Moreover, "a waiver of sovereign immunity 'cannot

be implied but must be unequivocally expressed.'" *Id.* (citing *United States v. King*, 395 U.S. 1,

4, 89 S. Ct. 150, 23 L. Ed. 2d 52 (1969)). In addition, when government officials are sued in

their official capacities, they are not personally liable for damages. *Atchinson v. District of

Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). Rather, "a suit is against the sovereign if the

judgment sought would expend itself on the public treasury or domain." *Dugan v. Rank*, 372

U.S. 609, 621, 83 S. Ct. 999, 10 L. Ed. 2d (1963). As a result, "[s]overeign immunity . . . bar[s]

---

Guerrieri, the prosecutor who tried the case" and reviewed the Grand Jury materials from
Plaintiffs' case. Germond Aff., Ex. C. The letter in no way indicates that Defendant Guerrieri
specifically discussed the Grand Jury testimony of Messrs. Jennings and Wood with the United
States Attorney's Office in 1991. Moreover, at the time of the December 2004 evidentiary
hearing before Judge Collyer, Defendant Guerrieri "could not remember whether he released the
Grand Jury testimony of Jennings and Wood in which they claimed that they did not go to the
Godfather." *Eastridge*, 372 F. Supp. 2d at 48. Thus, it is altogether possible that in 1991,
fourteen years after Plaintiffs' trial, Defendant Guerrieri might not have remembered whether
Messrs. Jennings and Wood's Grand Jury testimony was released to Plaintiffs.

suits for money damages against officials in their *official* capacity absent a specific waiver by the government." *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) (emphasis in original). Plaintiffs' claim against Defendants Guerrieri and Linsky in their official capacities is thus properly construed as one brought directly against the United States.

However, Plaintiffs cannot pursue a § 1983 action against the United States. The United States has not waived sovereign immunity with respect to actions for damages based on violations of constitutional rights by federal officials, regardless of whether such actions are brought against the United States directly or against the officials in their official capacity. *Id.* at 103, 104 n.31. Furthermore, although the United States has waived sovereign immunity for certain torts committed by federal employees pursuant to the Federal Tort Claims Act (FTCA), "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims." *FDIC v. Meyer*, 510 U.S. 471, 478, 114 S. Ct. 996, 127 L. Ed. 2d (1994). As a result, Plaintiffs cannot pursue their claims for "monetary damages for violations of civil rights . . . guaranteed to Plaintiffs under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments of the Constitution of the United States of America," Compl. ¶ 1, against either the United States directly, or against Defendants Guerrieri and Linsky in their official capacities. The Court shall therefore dismiss Counts One through Three of Plaintiffs' Complaint because, in the absence of a waiver of sovereign immunity by the United States, this Court lacks jurisdiction to entertain these claims.[8]

---

[8] Furthermore, the Court notes that Defendants appear to be correct in arguing that Plaintiffs cannot pursue an action against Defendants Guerrieri and Linsky under 42 U.S.C. § 1983 because Assistant United States Attorneys for the District of Columbia are federal officials who act under color of federal law. *See* Defs' Mot. to Dismiss at 12-15. To act under color of state law, "the defendant in a § 1983 action [must] have exercised power 'possessed by virtue of

C.    *Counts Four and Five Must Be Dismissed for Failure to Exhaust Administrative Remedies*

Counts Four and Five of Plaintiffs' Complaint are brought solely by Plaintiff Zukerberg,

---

state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49, 108 S. Ct. 2250 (quoting *Classic*, 313 U.S. at 326, 61 S. Ct. 1031). Here, pursuant to D.C. Code § 23-101 – which Congress had the power to approve or disapprove – the Corporation Counsel (now Attorney General) for the District of Columbia conducts prosecutions in the name of the District of Columbia where the maximum punishment is a fine only, or imprisonment not exceeding one year. D.C. Code § 23-101. However, "[a]ll other criminal prosecutions shall be conducted *in the name of the United States* by the United States attorney for the District of Columbia or his assistants." *Id.* (emphasis added). Furthermore, the United States Attorney is authorized under federal law to "prosecute for all offenses against the United States." 28 U.S.C. § 547. Thus, even though Plaintiffs were prosecuted in D.C. Superior Court, in participating in that prosecution as Assistant United States Attorneys, Defendants Guerrieri and Linsky acted in the name of the United States pursuant to authority vested in them by federal law. *See Williams v. United States*, 396 F.3d 412, 415 (D.C. Cir. 2005) (special police officer employed by U.S. Government Printing Office was a federal official authorized by the federal government to make arrests for violations of D.C. law); *Cmty. for Creative Non-Violence v. Unknown Agents of the U.S. Marshals Serv.*, 791 F. Supp. 1, 2 n.1 (D.D.C. 1992) (United States Marshals executing arrest warrant issued by the D.C. Superior Court were acting under color of federal law).

As federal officials acting under color of federal law, Defendants Guerrieri and Linsky are not amenable to suit under § 1983. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 398 n.1, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (Harlan, J. concurring); *see also Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005) ("Section 1983 does not apply to federal officials acting under color of federal law.") (citations omitted). However, the Court notes that Plaintiffs are incorrect in asserting that, if Defendants Guerrieri and Linsky cannot be sued under § 1983, it "would have the practical effect of denying an entire subset of individuals the rights afforded to them pursuant to 42 U.S.C. § 1983. This large subset of individuals would include most, if not all, criminal defendants in the District of Columbia." Pls. Opp'n at 16. Even if Assistant United States Attorneys for the District of Columbia are federal officials who act under color of federal law and therefore not amenable to suit under § 1983, they are still amenable to suit in their individual capacities under *Bivens*. *See Williams*, 396 F.3d at 416 ("plaintiffs alleging abuse by federal officials are not without a remedy" because they can bring actions pursuant to *Bivens*). Plaintiffs in the instant action, however, would be no more successful in pursuing a *Bivens* action against Defendants Guerrieri and Linsky than they are in pursuing a claim under 42 U.S.C. § 1983, because "the law of immunity in a *Bivens* claim against a federal official mirrors that in a section 1983 claim against a state official." *Moore v. Valder*, 65 F.3d at 192.

as Personal Representative of the Estate of Michael Damien.  In their motion to dismiss,

Defendants argue that these Counts must be dismissed for a number of reasons; however, the

Court shall only address Defendants' argument that Plaintiff Zukerberg has failed to plead the

timely exhaustion of administrative remedies required to pursue a claim under the FTCA.  *See*

Defs' Mot. to Dismiss at 16-19.  The Court agrees with Defendants that this failure necessitates

dismissal of Counts Four and Five and, as this failure is jurisdictional in nature, the Court does

not reach the other jurisdictional and merits issues raised in Defendants' motion to dismiss.

Counts Four and Five assert claims pursuant to the District of Columbia Survival Act,

D.C. Code § 12-101, and the District of Columbia Wrongful Death Act, D.C. Code. § 16-2701.[9]

"Under District of Columbia law, negligent conduct resulting in death gives rise to two

independent rights of action, one under the Wrongful Death Act and one under the Survival Act."

*Semler v. Psychiatric Inst. of Washington, D.C., Inc.*, 575 F.2d 922, 924 (D.C. Cir. 1978).  The

Wrongful Death Act creates "an entirely new right of action in favor of designated beneficiaries"

while the Survival Act "preserves and carries forward for the benefit of the deceased's estate the

right of action which the deceased would have had, had he not died."  *Id.* at 924-25.  Here,

Plaintiff Zukerberg's Wrongful Death claim "alleges that as a direct and proximate result of the

intentional, unconstitutional negligent and/or wrongful acts of the Defendants, the decedent was

falsely convicted of a crime for which he was innocent, and was subsequently imprisoned where

---

[9] The Court notes that Count Four purports to assert a claim for wrongful death, pursuant to D.C. Code § 12-101, while Count Five purports to assert a Survival Act claim pursuant to D.C. Code § 16-2701.  Compl. ¶ 46, 49.  In fact, the District of Columbia Wrongful Death Act is found in D.C. Code § 16-2701, while the District of Columbia Survival Act is found in D.C. Code § 12-101.  The Court will, however, overlook Plaintiff Zukerberg's reversal of the citations and treat his claims as if they identified the proper statutory authority.

he died on December 10, 2002," and further alleges that his next of kin suffered damages as a

result. Compl. ¶¶ 47-48. In contrast, Plaintiff Zukerberg's Survival Act claim "alleges that the

decedent's right of action for wrongful death and negligent conduct against the Defendants,

survives in favor of Plaintiff Paul Zukerberg, as the Personal Representative of the Estate of the

deceased." *Id.* ¶ 50.

Defendants assert that Plaintiff Zukerberg cannot maintain his Wrongful Death and

Survival Act claims because he has not alleged the timely exhaustion of administrative remedies

required to pursue a claim under the FTCA.[10] *See* Defs' Mot. to Dismiss at 16-19. The Court

agrees with Defendants. As discussed above, the FTCA "grants the federal district courts

jurisdiction over a certain category of claims for which the United States has waived its

sovereign immunity and rendered itself liable." *FDIC v. Meyer*, 510 U.S. at 477, 114 S. Ct. 996

(citation omitted). Specifically, the FTCA provides:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims
> against the United States, for money damages, . . . *for injury or loss of property,*
> *or personal injury or death caused by the negligent or wrongful act or omission of*
> *any employee of the Government* while acting within the scope of his
> employment, under circumstances where the United States, if a private person,
> would be liable to the claimant in accordance with the law of the place where the
> act or omission occurred.

28 U.S.C. § 1346(b) (emphasis added).

Plaintiff Zukerberg attempts to argue that Counts Four and Five are not grounded in

negligence, but rather are "expressly based on the violation of constitutionally protected rights"

and that as a result he is "not required to exhaust the administrative remedies of the Federal Tort

---

[10] The United States has been substituted as the sole defendant for Counts Four and Five
by virtue of a certification under 28 U.S.C. § 2679(d). *See* Defs.' Mot. to Dismiss at 16.

24

Claims Act since Plaintiffs' Complaint is not based on tort law." Pls' Opp'n at 17-18. As an

initial matter the Court notes that, as discussed above, Plaintiff Zukerberg cannot pursue

constitutional tort claims against Defendants Guerrieri and Linsky in their individual capacities

because they are entitled to absolute prosecutorial immunity, nor can he pursue constitutional tort

claims against the United States or against Defendants Guerrieri and Linsky in their official

capacities because the United States has not waived sovereign immunity with respect to

constitutional tort claims. Moreover, Plaintiff Zukerberg's argument that Counts Four and Five

are based on constitutional claims is unavailing because those Counts are clearly premised on

Plaintiff Zukerberg's allegation that "as a direct and proximate result of the intentional,

unconstitutional *negligent and/or wrongful acts of the Defendants*, the decedent was falsely

convicted of a crime for which he was innocent, and was subsequently imprisoned where he died

on December 10, 2002." Compl. ¶ 47 (emphasis added). Notwithstanding Plaintiff Zukerberg's

attempt to dress up Counts Four and Five in constitutional language, Plaintiff Zukerberg's

allegations fit squarely within the ambit of claims cognizable under the FTCA, for which the

FTCA provides the exclusive remedy. *FDIC v. Meyer*, 510 U.S. at 476, 114 S. Ct. 996 ("if a suit

is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive'); *see also* 28

U.S.C. § 2679(a).

Furthermore, the FTCA imposes "an administrative-filing requirement, satisfaction of

which is a jurisdictional prerequisite to the maintenance of a tort suit against the United States.

[The FTCA] requires that a claim be 'presented' to the appropriate federal agency prior to the

commencement of a lawsuit." *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987);

*see also McNeil v. United States*, 508 U.S. 106, 107, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993).[11]

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil*, 508 U.S. at 113, 113 S. Ct. 1980. Plaintiff Zukerberg has not alleged that before filing suit in this Court he first presented his claims in writing to the federal agency that allegedly caused the injury, rather he has explicitly disavowed such a requirement. *See* Pls' Opp'n at 18 ("Plaintiffs are not required to exhaust the administrative remedies of the Federal Tort Claims Act since Plaintiffs' Complaint is not based upon tort law."). As such, the Court must dismiss Counts Four and Five of Plaintiffs' Complaint for lack of jurisdiction. *See Carter v. McKain*, 94 Fed. Appx. 844, 844 (D.C. Cir. 2004); *see also Sanchez v. United States*, 49 F.3d 1329, 1329-30 (8th Cir. 1995).

## IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendants' motion to dismiss Plaintiffs' Complaint and shall dismiss Plaintiffs' Complaint in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date:   February 12, 2007

                                    /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge

---

[11] Pursuant to 28 U.S.C. § 2675(a), an "action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claims shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a).